```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
MAX IMPACT, LLC,                    :
                 Plaintiff,         :    09 Civ. 902 (LMM)
            - v -                   :    MEMORANDUM AND ORDER
SHERWOOD GROUP, INC.,               :
                 Defendant.         :
------------------------------------x
```

McKENNA, D.J.,

**1.**

Plaintiff Max Impact, LLC ("Max Impact") commenced this action in February of 2009 alleging, against defendant Sherwood Group, Inc. ("Sherwood"), claims for patent and copyright infringement and false designation of origin under the Lanham Act, as well as claims under New York law. Sherwood has asserted a number of counterclaims.

Sherwood moves, pursuant to Fed. R. Civ. P. 12(b)(1), for dismissal on the ground that Max Impact lacks standing, at least under the Patent Act. (See Sherwood Mem. at 1.)

**2.**

The patents at issue are U.S. Patent Nos. 4,848,437 ("'437 Patent") and 5,176,774 ("'774 Patent") (Compl. Exs. A & B, respectively). Both were issued; the '437 Patent in 1989 and the '774 Patent in 1993, to Josephe Lanado (since deceased) and Moshe

Har-El.  (<u>Id.</u>)[1]  According to the complaint, the '774 Patent was assigned to Roll-Screens, Inc. and then by Roll-Screens, Inc. to Argo Development & Production Ltd. ("Argo") (of which Harel is the sole owner).  (Compl. ¶ 8.)  In 2007, Argo and Harel entered into an agreement with Chanelia Ltd. ("Chanelia"), "whereby Chanelia was granted sole, exclusive, worldwide rights to manufacture, market and sell products made in accordance with the claims of the '437 patent and the '774 patent."  (<u>Id.</u> ¶ 9.)  Chanelia then entered into an agreement with Max Impact, "whereby the latter became the exclusive North American distributor and licensee of products made in accordance with the claims of the '437 patent and the '774 patent."  (<u>Id.</u> ¶ 10.)  This agreement provides that "Max Impact shall, if dissatisfied with Chanelia's enforcement of the '437 patent and the '774 patent, 'have the absolute right to institute any actions or replace Chanelia in an action against an infringer and/or to protect the Intellectual Property Rights.'"  (<u>Id.</u> ¶ 11.)  Harel, individually and as managing director of Argo, consented to Max Impact's exercising its rights under its agreement with Chanelia.  (<u>Id.</u> ¶ 12.)

**3.**

Sherwood makes factual attacks on the allegations of Max Impact on which Max Impact bases its standing.  It cites a

---

[1] Mr. Har-El is referred to in the motion papers as "Harel," and the Court does so as well.

January 4, 2008 letter from Max Impact to Chanelia that, it argues, terminated the agreement between them, and subsequent hostile communications between them. (See Sherwood Mem. at 6-7.) Sherwood also cites a statement of Argo to a potential customer (which was actually Sherwood, undisclosed) that Max Impact had no rights under the patents at issue. (Id. at 8.)

**4.**

Max Impact has the burden of showing its standing to bring its claim for patent infringement (Count I of the complaint). Ortho Pharm. Corp. v. Genetics Inst., Inc., 52 F.3d 1026, 1032-33 (Fed. Cir. 1995).

> Under 35 U.S.C. § 281, "[a] patentee shall have remedy by civil action for infringement of his patent." The term "patentee" encompasses "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d) (2000). A patentee may transfer title to a patent by assignment, and the assignee may be deemed the effective patentee under 35 U.S.C. § 281 for purposes of holding standing to sue another for patent infringement in its own name.
>
> While a licensee normally does not have standing to sue without joinder of the patentee, an exclusive license may be tantamount to an assignment for purposes of creating standing if it conveys to the licensee all substantial rights to the patent at issue. To determine whether an agreement to transfer rights to a patent at issue amounts to an assignment or a license, we must ascertain the intention of the parties and examine the substance of what was granted.

Aspex Eyewear, Inc. v. Miracle Optics, Inc., 434 F.3d 1336, 1339-40 (Fed. Cir. 2006) (quoting 35 U.S.C. §§ 281, 100(d)) (other

3

citations omitted).  The Federal Circuit has "accorded standing, in certain limited circumstances, where all substantial rights under the patent have been transferred in the form of an exclusive license, rendering the licensee the virtual assignee."  <u>Enzo APA & Son, Inc. v. Geapag A.G.</u>, 134 F.3d 1090, 1093 (Fed. Cir. 1998) (citation omitted).  Only a licensee that holds "'all substantial rights' under the patent," may sue without joining the patentee.  <u>Textile Prods., Inc. v. Mead Corp.</u>, 134 F.3d 1481, 1484 (Fed. Cir. 1998) (quoting <u>Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.</u>, 944 F.2d 870, 875 (Fed. Cir. 1991)).  "The party asserting that it has all substantial rights in the patent 'must produce . . . written instrument[s] documenting the transfer of proprietary rights.'"  <u>Mentor H/S, Inc. v. Med. Device Alliance, Inc.</u>, 240 F.3d 1016, 1017 (Fed. Cir. 2001) (<u>per curiam</u>) (quoting <u>Speedplay, Inc. v. Bebop, Inc.</u>, 211 F.3d 1245, 1250 (Fed. Cir. 2000)).  "A 'right to sue' provision within a license cannot, of its own force, confer standing on a bare licensee."  <u>Textile Prods.</u>, 134 F.3d at 1485.

**5.**

Max Impact has submitted a declaration of one of its managing members, James H. Manhardt, stating that Chanelia, with Argo and Harel, on or about January 11, 2007, "entered into a licensing agreement, whereby Chanelia was granted sole, exclusive, worldwide rights to manufacture, market and sell products . . . made in accordance with the claims of [the '437 and '774 patents],"

and that, on July 31, 2007, Chanelia entered into an agreement with Max Impact, "whereby Max Impact became the exclusive North American distributor and licensee of products made in accordance with the claims of the '437 patent and the '774 patent."  (Manhardt Decl., Nov. 27, 2009, ¶¶ 2 & 3 (Turcotte Decl., Feb. 5, 2010, Ex. A).)

Max Impact has also submitted a declaration of a director of Chanelia, Alan Sharp, stating that Chanelia, on July 31, 2007, entered into an agreement with Max Impact "whereby Chanelia, <u>inter alia</u>, assigned to Max Impact . . . its rights as the exclusive, North American licensee and distributor of the ROLLABANA® and [the '437 and '774 patents]."  (Sharp Decl., Dec. 9, 2009, ¶ 1 (Turcotte Decl., Feb. 5, 2010, Ex. B).)

Max Impact also submitted a declaration of Mr. Harel, CEO of Argo, which states that Mr. Harel is "able to confirm that Max Impact . . . has, been the <u>continuous</u>, <u>exclusive</u> North American licensee of these [<u>i.e.</u>, the '437 and '774] patents from July 31, 2007 through the present day, without any interruption."  (Harel Decl., Feb. 2, 2010, ¶ 3 (Turcotte Decl., Feb. 5, 2010, Ex. C.)

Annexed to an earlier declaration of Mr. Manhardt are copies of the July 31, 2007 Distribution Agreement between Chanelia and Max Impact (Manhardt Decl., Jan 29, 2009, Ex. 1 (Turcotte Decl., Jan. 30, 2009, Ex. D) and the January 11, 2007 Heads of Agreement between Argo and Harel, and Chanelia (Distribution Agreement, Ex. A).

5

As the case law set forth above instructs, it is the relevant agreements themselves that must govern the standing inquiry.

Several points must first be noted about the Argo/Harel-Chanelia Heads of Agreement.

The Heads of Agreement provides that: "At its sole discretion, [Chanelia] will be responsible at its own cost for enforcement of Argo's intellectual property rights in connection with the Products throughout the world." (Distribution Agreement, Ex. A ¶ 5.) The Heads of Agreement also provides that: "Argo agrees to maintain in all relevant jurisdictions the existing patents and other rights associated with the Products at its own cost." (Id. ¶ 6.) The Heads of Agreement further provides that: "In the production of the Products, [Chanelia] agrees to use only those manufacturers authorized by Argo, such authorization not to be unreasonably withheld provided that safeguards are in place to ensure production control (Authorized items, Quantities and Quality) and that the manufacturer produces only the Authorized Products and that the standards of production and quality of merchandise meet the standards required by the customers for the Products." (Id. ¶ 8.)

Several points must be noted about the Distribution Agreement as well. The "Territory" includes not only North America (as to which the license is exclusive), but also the People's

6

Republic of China (as to which it is not exclusive). (Distribution Agreement ¶¶ 3 & 4.)  The Distribution Agreement provides that: "Chanelia shall use all reasonable efforts to defend, maintain and enforce the Intellectual Property Rights [which include the '437 and '774 patents (see ¶ 1(b))] licensed to Max Impact at its own expense and shall send monthly descriptions to Max Impact of all actions taken during the previous month concerning identified infringers." (¶ 13(a).)  "If Max Impact is dissatisfied, in any respect, with Chanelia's efforts in any matter under this Section, Max Impact may give Chanelia notice thereof," and, after 21 days, proceed on its own, or replace Chanelia in litigation. (Id. ¶ 13(c).)

On the record, Max Impact has failed to show that it has all substantial rights to the '437 and '774 patents.

The fact that the Distribution Agreement gives Chanelia, in addition to an exclusive license for North America, a non-exclusive license for China, is not relevant in the present context. See Ortho Pharm., 52 F.3d at 1033.

However, it is apparent that Argo has retained substantial rights in the patents.  Argo agrees not only to "maintain in all relevant jurisdictions the existing patents," ¶ 6, but the right to determine who may manufacture the products. (Id. ¶ 8.)  The rights retained by Argo cannot be transferred by Chanelia to Max Impact, of course.  And Chanelia, which undertook

7

with Argo to "be responsible at its own cost for enforcement of Argo's intellectual property rights in connection with the Products throughout the world," (id. ¶ 5) has not given all of such rights and obligations to Max Impact, which can only exercise such rights as Chanelia has after giving 21 days' notice to Chanelia of its dissatisfaction (Distribution Agreement ¶ 13).

Under the circumstances here, both Argo and Chanelia must be joined as plaintiffs. Mentor H/S, 240 F.3d at 1018-19. The Court notes that the Distribution Agreement gives Max Impact the right to join Argo or Chanelia in an action on the patents. (Distribution Agreement ¶ 13(d).)[2]

**6.**

Sherwood's motion is granted to the extent that Max Impact is to file a motion for the joinder of Argo and Chanelia as plaintiffs in its claim for patent infringement (Count I) within 21 days of the date hereof. Otherwise, proceedings as to that claim are stayed pending further order of this Court.[3] Should Max Impact fail to move to join Argo and Chanelia, the action will be dismissed.

Dated: April 30, 2010

SO ORDERED.

Lawrence M. McKenna
U.S.D.J.

---

[2] The Court also notes that the Distribution Agreement (id. ¶ 32) which neither of the parties has invoked, provides for arbitration.

[3] Sherwood has not shown any reason for finding that Max Impact does not have standing as to any of its claims other than Count I.

8