UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| MAX IMPACT, LLC and CHANELIA, LTD., | : | |
| Plaintiffs, | : | |
| vs. | : | Case No. 09 CV 902 (JGK)(HBP) |
| SHERWOOD GROUP, INC., | : | |
| Defendant. | : | |
| vs. | : | |
| MAX IMPACT, LLC  and BAMBAMS, LLC, | : | |
| Third-Party Defendants | : | |
| | : | |

_____

---

## THIRD-PARTY DEFENDANT BAMBAMS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO PRECLUDE CERTAIN DOCUMENTS AND WITNESSES OF DEFENDANT SHERWOOD GROUP, INC. PURSUANT TO FED.R.CIV.P. 37

---

On Memorandum:

    Christopher B. Turcotte, Esq.

THE LAW OFFICE OF
 CHRISTOPHER B. TURCOTTE, P.C.
575 Madison Avenue, Suite 1006
New York, New York  10022
(212) 937-8499
*Attorneys for Third-Party Defendant
BamBams, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................... (ii)

PRELIMINARY STATEMENT ...................................................... 1

STATEMENT OF RELEVANT FACTS ............................................ 2

LEGAL ARGUMENT

    POINT I

    IN VIEW OF ITS FAILURE TO PROVIDE DAMAGES CALCULATIONS
    PURSUANT TO FED.R.CIV.P. 26(a), AND TO PROVIDE REQUESTED
    FINANCIAL DOCUMENTS DURING DISCOVERY AND PURSUANT TO
    COURT ORDER, SHERWOOD SHOULD BE PRECLUDED FROM USING
    UNRELIABLE QUICKBOOKS REPORTS AND SUMMARIES AS
    EVIDENCE OF ITS DAMAGES CLAIM .......................................... 10

    A.  Preclusion Is Proper Where Sherwood Has Never Proffered a
        Computation of Its Damages Pursuant to Fed.R.Civ.P. 26(a)(1)(C) ... 15

    B.  Preclusion of Sherwood's QuickBooks Summaries and Reports
        Is Proper Given Their Unreliability and Its Failure to Produce
        Documents Repeatedly Sought by BamBams ........................... 18

    C.  Preclusion Is Proper Given Sherwood Failed to Comply with
        the Court's Order to Search for and Produce Copies of Its
        Bank Deposit Slips and Wire Transfer Confirms ....................... 21

    POINT II

    SHERWOOD SHOULD BE PRECLUDED FROM CALLING ITS
    ACCOUNTANT OR BOOKKEEPER AS A WITNESS SINCE THESE
    INDIVIDUALS WERE NOT IDENTIFIED ON ITS RULE 26 DISCLOSURES
    AND ONLY IDENTIFIED AFTER THE FACT DISCOVERY DEADLINE ... 24

CONCLUSION .......................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*American Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002)................. 12, 14

*Austrian Airlines Oesterreichische Lufverkehrs AG*,

     2005 WL 977850 (S.D.N.Y. April 28, 2005)……………...……………….…..... 14

*Castro v. City of New York*, 2009 WL 2461144 (E.D.N.Y. Aug. 10, 2009)………………..…12

*Design Strategies, Inc. v. Davis*, 367 F.Supp.2d 630 (S.D.N.Y. 2005)……...…..…………... 11-12

*Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006)…………………….…... 12-13, 17

*Gilvin v. Fire*, 2002 WL 32170943 (D.D.C. Aug. 16, 2002)……...…….…………………... 14

*Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 2013 WL 3718071 (July 15, 2013)…….……..  15

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc.*,

     628 F.Supp.2d 312, 317 (E.D.N.Y. 2009)……………………………………..……... 20

*Norbrook Laboratories Ltd. v. G.C. Hanford Manufacturing Corp.*,

     297 F.Supp.2d 463 (N.D.N.Y. 2003)……………………………………………..… 14

*Oceans Cuisine, Ltd. v. Fishery Products Int'l, Inc.*,

     2006 WL 1071578 (E.D.N.Y. April 21, 2006)……………………………….……... 14

*Plato General Construction Corp. v. Dormitory Authority*,

     2010 WL 2035273 (N.Y.Sup. May 20, 2010) …………………………………..…... 14

*Reed Construction Data Inc. v. McGraw-Hill Companies, Inc.*,

     2013 WL 1608489 (S.D.N.Y. April 15, 2013)……………………………...…... 15

*Richmond v. General Nutrition Centers Inc.*,

     2012 WL 762307 (S.D.N.Y. March 9, 2012)………………………………….... 15, 23

*Roberts v. Ground Handling, Inc.*, 2007 WL 2071568 (S.D.N.Y. 2007).........................13-14, 17

*Spotnana, Inc. v. American Talent Agency, Inc.*,

     2010 WL 3341837 (S.D.N.Y. Aug. 17, 2010).............................................. 13

*Wright v. Aargo Sec. Servs.*, 2001 WL 1035139 (S.D.N.Y. Sept. 7, 2001) ...............................12

## Statutes

Fed.R.Civ.P. 26.................................................................................... 10, 12-15, 17, 25

Fed.R.Civ.P. 37................................................................................... 11, 12-15, 25

Treatises

Fed.R.Civ.P. 26(a)(1)(c) Advisory Committee Notes to 1993 Amendments.............................. 13

<u>PRELIMINARY STATEMENT</u>

The law, specifically *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) and its progeny, is clear that a party asserting lost profits as the principal component of its damages calculation cannot simply rely upon self-generated summary charts and financial statements but has an obligation to preserve and produce the actual business records upon which such losses are allegedly founded, and that failure to preserve and produce such records, particularly when expressly and repeatedly sought in discovery and when such production is ordered by the Court, is grounds for preclusion pursuant to Fed.R.Civ.P. 37. Here, defendant Sherwood Group, Inc. ("Sherwood"), despite having argued, since the time it filed its counterclaims in early 2009, that its so-called "baseline" for its "lost profits" claim is the difference in its "Expand-A-Banner" sales from its 2006 peak year to the decline in banner sales for subsequent, post-recession years, has preserved virtually no banking records or invoices which corroborates its accounts receivable for 2006 sales, nor any banking records or other accounts payable records that establishes its manufacturing costs for that year. Instead, it attempts to rely upon QuickBooks on-line summaries that, based on an auditing process ordered by the Court, have proven to be unreliable and have never been verified by its accountant.

Accordingly, third-party defendant BamBams, LLC ("BamBams") seeks an order precluding Sherwood's use of QuickBooks-generated summaries and reports as evidence of gross profits and the costs of goods sold in its damages calculation, given its ongoing failure to produce court-ordered paper invoices and wire transfer confirmation, or for that matter corresponding, unambiguous banking records that substantiate these accounts receivable and payable amounts in support of its damages claim. Additionally, insofar as Sherwood identified its bookkeeper and accountant as the individuals who have any personal knowledge of its accounting records only after the deadline for fact discovery had passed, and these persons were

not identified in Sherwood's Rule 26 disclosures or other discovery, BamBams further seeks an order precluding these individuals from offering testimony at trial or future motion practice.

<u>STATEMENT OF RELEVANT FACTS</u>

On February 19, 2013, Sherwood served its Rule 26 disclosures.  In connection with its disclosure of persons "likely to have discoverable information that the disclosing party may use to support its claims or defenses" pursuant to Fed.R.Civ.P. 26(a)(1)(A), Sherwood identified just nine (9) individuals: (i) three individuals who work for its Chinese manufacturer (Huican Li, Ms. Green, Mr. Kelvin), (ii) Sherwood president Howard Schwartz, (iii) the principal of former third-party defendant Argo Development & Production Ltd. (Moshe Harel), (iv) its expert, Dr. Robert Briber, (v) Max Impact principal Jim Manhardt, (vi) BamBams president Dan Taylor, and (vii) Argo's then counsel, Daniel Isaacs.  Notably it did not identify Sherwood's accountant or bookkeeper among the persons with discoverable information.  *See* Declaration of Christopher B. Turcotte dated November 18, 2013 ("Turcotte Decl.") at ¶2, and Sherwood Rule 26 Disclosures annexed thereto as Ex. A, at 1-2.

In connection with its disclosure of "all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the discovering party may use to support its claims or defenses" pursuant to Fed.R.Civ.P. 26(a)(1)(B), Sherwood identified a series of Declarations and letters filed in this matter, certain patent filings, email generated by employees of Sherwood's Chinese manufacturer, the reports of the parties' chemistry experts, deposition transcripts, and various BamBams and Max Impact website and catalogue excerpts.  *Id.* at 2-3.  Notably, there is no reference to any Sherwood business, financial or banking records.  *See* Turcotte Decl. at ¶3.

In connection with its disclosure of "a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which such computation is based" pursuant to Fed.R.Civ.P. 26(a)(1)(C), Sherwood did not provide a calculation or basis of damages but rather listed the following, alleged damages:

1) Defendant's lost sales from 2007-2010 are at least $1 million, resulting in lost profits of at least $350,000.
2) Defendant's lost future sales are at least $500,000, resulting in lost profits of at least $175,000.
3) Damage to Defendant's reputation is at least $500,000.
4) Profits made by Max Impact and BamBams are at least $1.2 million.
5) Defendant incurred legal fees in excess of $100,000.

*See* Turcotte Decl. at ¶3, and Sherwood Rule 26 Disclosures annexed thereto as Ex. A, at 4. Notably, there is no computation of damages, let alone any *exact* damages totals.

On April 5, 2013, BamBams served its First Set of Requests for Documents upon defendant Sherwood Group, Inc. ("Sherwood").   *See* Turcotte Decl. at ¶5, and true and accurate copy of Document Requests annexed thereto as Ex. B.  Among the requests were the following:

- Request No. 1: Any and all documents referencing or relating to the manufacture of the Expand-A-Banner, including but not limited to all contracts and work orders with and records of payments to the Expand-A-Banner manufacturer(s) and any applicable specifications or patents.

- Request No. 3: Any and all documents referencing or relating to the sale of the Expand-A-Banner, including but not limited to sales contracts, orders, invoices, receipts, ledgers and customer lists.

- Request No. 6: Any and all documents, including but not limited to true and complete copies of federal and state tax returns, financial statements, W-2 tax forms and 1099 tax forms for Sherwood which reflects, incorporates or includes revenue and units sold each year from its sale of the Expand-A-Banner for the years 2006, 2007, 2008, 2009, 2010 and 2011**.**

- Request No. 20: Any and all documents substantiating or relied upon in Sherwood making the claim, at paragraph 26 of its Amended Counterclaims,

that "Sherwod Group has suffered and will continue to suffer damage and
losses, including but not limited to, irreparable injury to its business reputation
and goodwill."

- Request No. 21: Any and all documents substantiating or relied upon in
  Sherwood making the claim, at paragraph 27 of its Amended Counterclaims,
  that it has incurred at least $300,000 in lost profits, damages, and damaged
  reputation as a result of BamBams' actions.

- Request No. 27: Any and all documents substantiating or relied upon in
  Sherwood making the claim, at paragraph 35 of its Amended Counterclaims,
  that BamBams' "wrongful interference has injured and is causing irreparable
  harm to Sherwood Group, including, but not limited to, lost sales, lost
  business opportunities and damage to Sherwood's business relations and
  reputation."

- Request No. 28: Any and all documents substantiating or relied upon in Sherwood
  making the claim, at paragraph 36 of its Amended Counterclaims, that its "lost profits
  and damages are at least $300,000" and that it is further entitled to "punitive damages
  in the amount of at least $300,000."

- Request No. 36: Any and all documents, communications, tangible things, and
  evidence referenced in your Initial Disclosures and any Supplemental
  Disclosures that you may file.

- Request No. 37: Any and all documents substantiating or relied upon in Sherwood
  making the claims of lost sales, lost future sales, lost profits and incurred legal fees in
  its Initial Disclosures.

On May 8, 2013, Sherwood served its response to BamBams' document requests.[1]  *See*

Sherwood Response to Document Requests, together with documents producd in response to

Request No. 37 annexed to Turcotte Decl. as Ex. C.  By letter to Sherwood's counsel dated May

10, 2013, the undersigned identified particular deficiencies in Sherwood's discovery response,

chief among them the total lack of documentary support for its alleged damages ranging between

$500,000 and $1 million, arising from Sherwood's claims of false advertising and tortious

interference of contract by BamBams relating to the parties' competing sales of their respective

---

[1]      Sherwood did not object to any of BamBams' document requests.

hand-held, self-rollable banner products.  Per the May 10th letter, despite BamBams' discovery requesting all documents (such as purchase orders, invoices, banking and tax records, and accounts receivable records) that demonstrate Sherwood's alleged revenue history, lost profits and corresponding damages since 2006, defendant's original production only cited to two, half-page charts that it or its attorney had generated in the context of a prior settlement conference. *See* Turcotte Decl. at ¶6.

In response to the May 10th letter, on May 30, 2013, BamBams received Sherwood's supplemental document production, which consisted almost exclusively of (i) "invoice" printouts from Sherwood's QuickBooks database for its "Expand-A-Banner" product for the years 2006 and 2007 only, and (ii) wire transfer confirmations for payments from Sherwood to the bank of its Chinese banner manufacturer, Henghui Plastic & Rubber Co., from January 2008 through April 2013.  *See* Turcotte Decl. at ¶7.

By letter to Sherwood's counsel dated June 5, 2013, BamBams explained that the supplemental production still fell woefully short of providing the documents that demonstrated Sherwood's alleged revenue history, lost profits and corresponding damages since 2006:

> These documents not only fail to fully comply with the document requests, but they do not shed any true light on Expand-A-Banner receivables.  The 2006 invoices, apart from containing duplicates (*e.g.*, 324 & 327, 323 & 328, 343 & 345 are the same invoices), only confirm, at best, what was billed to Sherwood customers, not actual sales proceeds; in fact, the largest invoices (e.g., 333, 334, 340, 349, 360, 371, 372) indicate a balance due with no documentation produced to establish that such balances were ever paid.  Moreover, the total amount of "balances due" ($136,505.29) [indicated on the invoices] is approximately 30% of the alleged, total Expand-A-Banner sales for 2006, which Sherwood maintains is the "baseline" for its damages claim.

In an email to the undersigned dated June 7, 2013, Sherwood's counsel advised that "we are preparing a line by line response to your letter dated June 5, 2013.  We will send it to you within

the next few days."  In a reply email of same date, the undersigned reminded counsel of a then

looming discovery deadline and agreed to attempt to resolve the discovery dispute promptly,

without the need for judicial intervention, so long as Sherwood was not adverse to an extension

of the discovery deadline, if necessary; Sherwood agreed via email that it would consent to any

necessary extension of the discovery deadline.  *See* Turcotte Decl. at ¶8.

By separate email dated June 12 and 13, 2013, the undersigned inquired of Sherwood's

counsel as to the status of the line-by-line response to the June 5th letter.  In a June 14th email

reply, Sherwood's counsel advised that "Sherwood is working on the responses, and will have

them to you next week."  *See* Turcotte Decl. at ¶9.

Having still not received a response to the June 5th letter, by email to Sherwood's counsel

dated June 24, 2013, BamBams again inquired about the response's status.  On June 26, 2013,

BamBams wrote to the Court requesting a Rule 37 conference in view of the substantial, ongoing

deficiencies in Sherwood's discovery responses, specifically the total lack of business and

banking records supporting its damages claim.  To accommodate Sherwood president Howard

Schwartz's schedule, the Court held the Rule 37 conference on July 19, 2013.  *See* Turcotte Decl.

at ¶10.

At the July 19th conference, Sherwood reiterated that its benchmark, or using its

vernacular "baseline", for its damages claim is the difference in banner sales from its 2006 peak

year to the decline in banner sales for subsequent years.  This quantum or theory of damages, by

the way, has been advanced by Sherwood since the time it filed its counterclaims in early 2009,

in court filings and settlement conference submissions.  Mr. Schwartz, acknowledged that

Sherwood had failed to produce materials that BamBams had requested in document requests –

including but not limited to copies of the hard copy invoices that had been actually transmitted to

banner sales customers, and banking records that evidenced Sherwood's accounts receivables for the banner sales as well as accounts payable for its manufacturing costs – but insisted that the Sherwood QuickBooks records that had been produced were sufficient to establish its 2006 gross profits and costs, as those records, according to Mr. Schwartz, were provided to Sherwood's accountant to prepare its 2006 tax returns.  *See* Turcotte Decl. at ¶11.

BamBams countered that it was entitled to review Sherwood's primary business records and not rely on internal computer records, which *only purport* to record financial information from the actual business records.  Indeed, the Court recognized the validity of this point, noting that Sherwood's accountant was never provided the actual invoices and accounts receivable records (copies of checks, bank deposit slips, etc.) of Sherwood products or accounts payable banking records, nor did the accountant's tax return (upon the Court's inspection) segregate the subject "Expand-A-Banner" profits or cost of goods sold (COGS) from the company's total gross revenue and COGS.  *See* Turcotte Decl., at ¶12, and 7-19-13 Tr. annexed thereto as Ex. D, at 36:5-11 (Court observing "if I were in Mr. Turcotte's shoes I suppose the question I would be asking well, but that's fine but your accountant is still relying on numbers that originated with Sherwood and there's no objective – the mere fact that your accountant with all honesty repeats the numbers that you give the accountant does not substantiate the numbers that you gave the accountant"); *id.* at 9:6-12:8 (Court recognizes that BamBams' discovery requests "goes beyond" QuickBooks summary printouts and that BamBams' seeks backup documentation); *id.* at 13:14-16, 15:2-4 (Schwartz acknowledges that accountant relies upon Sherwood's "internal QuickBooks accounting" and "QuickBooks reports" to prepare tax returns).

Therefore, by Order dated July 25, 2013, this Court, *inter alia*, directed Sherwood to produce to BamBams (i) bank statements and, to the extent still available, deposit slips for the

7

year 2006; (ii) QuickBooks summaries of Sherwood's accounts receivable for the Expand-A-Banner product for the years 2011 to present; and (iii) wire transfer confirmations reflecting the number of units and the corresponding cost of defendant's manufacture of the Expand-A-Banner product for the years 2005 through 2007.  *See* 7-25-13 Order annexed to Turcotte Decl. as Ex. E. In order to audit or test the validity of Sherwood's claim that its QuickBook summaries of its accounts receivables were consistent with its hard-copy invoices (*see* 7-19-113 Tr. annexed to Turcotte Decl. as Ex. D, at 47:18-48:18),[2] the Court's July 25th Order also directed Sherwood to produce the paper invoices for the Expand-A-Banner product generated at or about the date they bear for a 6-month period to be identified by BamBams.  *See* Turcotte Decl. at ¶13.

Sherwood proceeded to produce its bank statements for 2006.  Sherwood's counsel also represented at the time that defendant "has conducted an extensive search and Sherwood has not retained the deposit slips from 2006.  However, the bank statements clearly show each and every deposit to the extent you need to see them."  *See* Turcotte Decl. at ¶14, and 8-8-13 Sherwood Counsel's Email annexed thereto as Ex. F.  And while Sherwood also produced the QuickBook summaries for Sherwood's "Expand-A-Banner" accounts receivables for the years 2011 through the present, it further advised BamBams that it "has not retained the wire transfers for the years 2005, 2006, and 2007" to its Chinese manufacturer, which would evidence the defendant's production costs of the Expand-A-Banner.[3]  *Id.*

---

[2]      Mr. Schwartz confirmed during the July 19th court conference that so-called "invoices" that Sherwood produced to BamBams at that point were not necessarily the invoices that had been transmitted to customers but were generated from an existing QuickBooks program.  7-19-13 Tr. annexed to Turcotte Decl. as Ex. D, at 39:13-41:8, 45:15-21.

[3]      The majority of the wire transfer entries on Sherwood's 2006 banking statements are non-descript as to the subject Sherwood product or transaction, and the total dollar amount of wire transfers identified on the 2006 bank statements does not come close to matching the QuickBooks-generated P&L

Finally, based on the undersigned's review of the foregoing documents, in conjunction with other Sherwood discovery responses, BamBams advised Sherwood that it desired the paper invoices for the Expand-A-Banner product generated from July 1, 2013 through December 31, 2013.  Just over a month after BamBams submitted this request, Sherwood produced twelve (12) paper invoices from this period.  On October 16, 2013, BamBams transmitted a letter to Sherwood's counsel, advising that these invoices constitute *only twenty percent (20%) of the fifty-eight (58) orders* that Sherwood's QuickBooks summaries identified for this period and *accounts for approximately $235,484.80 of the $399,311.13 that Sherwood claims in gross profit for this period*.  The letter further advised counsel that of the 12 produced invoices, *two of them deviated in dollar amount from the QuickBooks summaries that Sherwood produced.* BamBams requested that Sherwood address these discrepancies in writing by the end of the week so it could, *inter alia*, evaluate if there had been any spoliation of evidence.  *See* Turcotte Decl. at ¶15.

On October 18, 2013, Sherwood's counsel transmitted an email, stating that "Sherwood was not able to find any additional invoice pages from 2006, since it was 7 years ago" and attached a copy of the first page of Sherwood's 2006 tax return (which, as the Court noted at the July 19th conference, only shows total gross revenue for the company, with no breakout of Expand-A-Banner revenue or COGS [7-19-13 Tr. annexed to Turcotte Decl. as Ex. D, at 28:14-25]) and a QuickBooks-based 2006 balance sheet and P&L statement, which only provide single, line items that purport to report Expand-A-Banner revenue and COGS, but without any backup. *See* Turcotte Decl. at ¶16.

---

Statement's line item for the Expand-A-Banner product's COGS, which makes the Sherwood's COGS amount also unreliable.

On October 21, 2013, BamBams wrote to the Court requesting permission to make its

motion to preclude or, in the alternative, a second conference pursuant to Local Rule 37.2.  In

response, by letter dated October 24, 2013, Sherwood identified ***for the first time*** the name of its

accountant, David Payne, and produced heretofore non-disclosed P&L and Balance Sheet

documents and and argued that "Sherwood should be allowed to rely on the testimony of

[Payne]" to substantiate the accuracy of these documents.[4]  *See* Turcotte Decl., at ¶17, and 10-

24-13 Letter annexed to Turcotte Decl. as Ex. G.  At the conclusion of a court teleconference

held on October 28, 2013, in which Sherwood was represented by its counsel and president,

Howard Schwartz, the Court granted BamBams permission to file this motion to preclude.

On November 13, 2013, more than three weeks after the close of fact discovery,

Sherwood produced 105 pages of copies of bank deposit slips and corresponding checks from

deposits to its Bank of America account made in November and December 2006.  *See* Turcotte

Decl., at ¶18.

LEGAL ARGUMENT

POINT I

IN VIEW OF ITS FAILURE TO PROVIDE DAMAGES CALCULATIONS PURSUANT TO
FED.R.CIV.P. 26(a), AND TO PROVIDE REQUESTED FINANCIAL DOCUMENTS
DURING DISCOVERY AND PURSUANT TO COURT ORDER,
SHERWOOD SHOULD BE PRECLUDED FROM USING UNRELIABLE QUICKBOOKS
<u>REPORTS AND SUMMARIES AS EVIDENCE OF ITS DAMAGES CLAIM</u>

Based on the fact that Sherwood (i) did not comply with its obligations under

Fed.R.Civ.P. 26(a)(1)(C) to provide a computation of damages, (ii) did not produce financial

---

[4]     In addition to the omission of Payne's name from Sherwood's Rule 26 disclosures, during the
October 28th court teleconference, Sherwood president Howard Schwartz named Anita Pastan, whose
identity was also not disclosed on Rule 26 disclosures nor otherwise disclosed in discovery, as the
Sherwood bookkeeper who input the data entries on Sherwood's QuickBooks program.  *See* Turcotte
Decl. at n.3.

10

records concerning its damages claim that were repeatedly sought by BamBams, and (iii) did not comply with the Court's Order to produce certain financial records that had a bearing on its damages claim, Sherwood should be precluded from using self-generated and unreliable QuickBooks reports and summaries in support of its damages claims.

It is well established that the failure to meet such discovery obligations, regardless of whether such failure is the result of bad faith and particularly in the context of discovery concerning damages claims for lost profits, constitutes a valid basis for preclusion pursuant to Fed.R.Civ.P. 37.  In *Design Strategies, Inc. v. Davis*, 367 F.Supp.2d 630 (S.D.N.Y. 2005), the court similarly addressed the case in which the plaintiff failed to provide the defendants or the court with the required computation of lost profits pursuant to Rule 26(a)(1) or sufficient discovery to assess the basis of damages.  As here, plaintiff argued that its disclosure of financial statements was adequate discovery to pursue its lost profits claim.  The district court, in noting that a finding of bad faith was irrelevant as to whether preclusion was appropriate, observed that preclusion was automatic in cases in which the failure to disclose "lacks a substantial justification and is not harmless."  *Id.* at 634.  In rejecting plaintiff's assertion that production of the financial statements satisfied Rule 26 requirements, the court held:

> Design has not provided any justification for its failure to disclose information regarding the amount of, or basis for computing, its alleged lost profits.  Instead, Design's counsel argued  . . . that Design's disclosure of its financial statements constitutes sufficient discovery to enable it to proceed with its lost profits claim. Design's financial statements, however, do not provide any means by which to compute the profits that Design would have earned had it been awarded the Microsoft contract.  While the financial statements may indicate Design's standard profit margin, they do not provide any basis on which to calculate the specific sum of money that [a project] would have generated had it been awarded to Design, nor the percent of that sum that Design would have retained.

11

*Id.* at 634-35.  Noting that the burden of proving substantial justification for the failure to disclose and harmlessness lies with the dilatory party,[5] the court found that plaintiff had established neither.  In determining that "preclusion of any evidence of lost profits is mandatory under Rule 37(c)(1)", the court further found that plaintiff "failed to provide the Court with any basis on which to determine whether or not its alleged lost profits are 'capable of measurement based upon known reliable factors without undue speculation,' as New York law requires.  The absence of any basis on which to make this determination further supports the Court's holding that Design may not pursue a lost profits theory of damages at trial." *Id.* at 635 (citation omitted).

The Second Circuit, in affirming the preclusion order, likewise rejected Design Strategies argument that the disclosure of financial statements satisfied plaintiff's Rule 26 requirements relative to lost profits, holding:

> Design argues that it was not in violation of Rule 26(a)(1)(c) because '[i]n the instant action there was no direct order to the Plaintiff to calculate damages. ***The simplicity of taking Design's revenue and deducting the cost of operations from the financial statements would have yielded the gross profits.' This is a misstatement both of the facts of this case and of Rule 26(a)'s requirements***. . . .
>
> . . . ***[B]y its very terms Rule 26(a) requires more than providing – without any explanation – undifferentiated financial statements; it requires a 'computation,' supported by documents***. . . .  ***Design's 'simple arithmetic' calculation is wholly inadequate as a measure of damages*** . . . .  At the late point in the proceedings when Design disclosed that it would be presenting lost-profit witnesses, much greater detail than previously provided would have been necessary to satisfy Rule 26(a). . . .
>
> . . . Rule 26(a) requires a party to provide a computation of any category of damages voluntarily, i.e., 'without awaiting a discovery request'. . . .

---

[5]      *See also Castro v. City of New York*, 2009 WL 2461144, at *6 (E.D.N.Y. Aug. 10, 2009)(in ordering preclusion, court held "it is *plaintiff's* burden to demonstrate lack of prejudice, not *defendants'* burden to demonstrate that they are prejudiced")(citing *Wright v. Aargo Sec. Servs.*, 2001 WL 1035139 (S.D.N.Y. Sept. 7, 2001); *American Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002)("Rule 37(c)(1)'s preclusionary exclusion is 'automatic' absent a determination of either 'substantial justifiation' or harmlessness' . . .  The burden to prove substantial justification or harmlessness rests with the dilatory party")(emphasis in original)).

> . . . Rule 26(a) requires a party – in addition to providing a calculation of damages – to make 'available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which such computation is based.'  The Advisory Committee Notes to Rule 26(a)(1)(c) accompanying its promulgation make clear that the rule 'imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under Rule 34.  *A party claiming damages or other monetary relief must, in addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying as if a request for such material had been made under Rule 34*.'  Fed.R.Civ.P. Advisory Committee Notes to 1993 Amendments.  Design failed to disclose both a calculation of damages *and* the documents supporting that calculation.

*Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295-96 (2d Cir. 2006)(emphasis added).  The appellate court further noted that "[t]he prejudice to the defendants in having to prepare for this evidence would have been severe, as discovery would have had to be reopened to determine whether Design's calculations were proper."  *Id.* at 297.  Finally, the Second Circuit affirmed the district court's finding that there was no "bad faith" prerequisite for a preclusion order, concluding that "[s]ince Rule 37(c)(1) by its terms does not require a showing of bad faith, we now hold that such a requirement should not be read into the Rule."  *Id.* at 296.

In the decisions that follow and immediately precede *Design Strategy*, the courts of this Circuit have regularly sanctioned plaintiffs who have failed to disclose their computation of damages and documents in support thereof in accordance with Rule 26(a) or related discovery obligations.  For example, in *Spotnana, Inc. v. American Talent Agency, Inc.*, 2010 WL 3341837, at *1-2 (S.D.N.Y. Aug. 17, 2010), the court, in rejecting the defendant's argument that it complied with Rule 26's damages computation requirement with respect to its counterclaim vis-à-vis the production of email and a wire transfer log, dismissed such documents as "not a 'computation of each category of damages claimed'" in precluding defendant from introducing evidence of its damages as to the counterclaim.  *See also Roberts v. Ground Handling, Inc.*, 2007

WL 2071568, at *4 (S.D.N.Y. 2007)(failure to disclose measure of damages in Rule 26 initial

disclosures, standing alone, is sufficient ground to preclude such evidence at trial); *Oceans*

*Cuisine, Ltd. v. Fishery Products Int'l, Inc.*, 2006 WL 1071578, at *5-6 (E.D.N.Y. April 21,

2006)(district court affirms the magistrate judge's imposition of monetary sanctions under Rule

37 for plaintiff's failure to disclose its Rule 26 damages computation until after the discovery

cut-off); *Austrian Airlines Oesterreichische Lufverkehrs AG*, 2005 WL 977850, at *1-2

(S.D.N.Y. April 28, 2005)(based on plaintiff's failure to complete damages analysis, court

precluded damages theory since "Rule 37 requires virtually automatic preclusion of information

not disclosed pursuant to Rule 26(a)(1)"); *Norbrook Laboratories Ltd. v. G.C. Hanford*

*Manufacturing Corp.*, 297 F.Supp.2d 463, 481 (N.D.N.Y. 2003)(as a result of defendant's failure

to produce requested sales projection documents, testimony of defendant's president concerning

projected sales stricken); *American Stock Exchange v. Mopex, Inc.*, 215 F.R.D. 87, 93-96

(S.D.N.Y. 2002)(plaintiff's expansion of damages claim after the fact discovery cut-off and

without Rule 26 supplemental disclosure warranted preclusion of new damages claim).[6]

In *Richmond v. General Nutrition Centers Inc.*, 2012 WL 762307, at *4-8 (S.D.N.Y.

March 9, 2012), in view of plaintiffs having failed to produce certain financial records and a

computation of damages ordered by *this Court*, and rejecting plaintiffs' argument that their

"sparse" document production as to damages was sufficient because "the few documents they

produced . . . were all they possessed" and "their damages analysis was fairly conveyed during

settlement discussions", the district court precluded plaintiffs from offering any damages

---

[6]     *See also Gilvin v. Fire*, 2002 WL 32170943 (D.D.C. Aug. 16, 2002)("At no time prior to filing
the Pretrial Statement did Plaintiff . . . provide a computation of [   ] damages in accordance with
Fed.R.Civ.P 26(a)(1)(C) ....  [B]ecause Plaintiff failed to provide Defendant with a computation of his
damages for expense restrictions and failed to provide any factual basis whatsoever for the claim, Plaintiff
may not present evidence at trial of those damages").

14

evidence at trial not produced in discovery or any damage calculation not based on documents produced in discovery.

This Court has likewise imposed sanctions in the wake of a plaintiff's failure to timely disclose damages documentation and computations. For example, in *Reed Construction Data Inc. v. McGraw-Hill Companies, Inc.*, 2013 WL 1608489, at 2-3 (S.D.N.Y. April 15, 2013), this Court precluded at trial the introduction of a lost business claim and the belated evidence of 26 lost customers, citing the lack of justification for timely disclosure and the prejudice to defendants in terms of the need to reopen discovery and attendant costs. Similarly, in *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 2013 WL 3718071, at *11-15 (July 15, 2013), this Court likewise found that in view of plaintiff's "plainly defective" Rule 26 disclosures – which included no computation of plaintiff's damages claim or backup documentation – and non-compliance with discovery orders, defendants "ha[d] made a *prima facie* showing that plaintiff has violated Fed.R.Civ.P. 37(b)(2) and (c)(1)."

A. Preclusion Is Proper Where Sherwood Has Never Proffered a Computation of Its Damages Pursuant to Fed.R.Civ.P. 26(a)(1)(C)

As the foregoing case law makes clear, preclusion is warranted where a party with affirmative claims fails to disclose the computation of its damages and the documentation underlying this calculation pursuant to Rule 26(a)(1)(C). Here, Sherwood not only failed to provide such calculations in its Rule 26 initial disclosures, but failed to do so prior to the close of fact discovery on October 21, 2013.

Indeed, Sherwood has not only failed to provide computations for its damages but has not even provided precise totals for its respective categories of damages. Instead its Rule 26 disclosures refer to damages of "at least" or "in excess of" large, rounded numbers which depart

substantially from prior and subsequently reported figures.  For example, in Sherwood's Answer, Affirmative Defenses and Counterclaims to Plaintiff's Amended Complaint filed on September 30, 2010, Sherwood alleged lost profits and damages of "at least $300,000."  *See* true and accurate copy of Sherwood Answer annexed to Turcotte Decl. as Ex. H, at ¶36.  On February 19, 2013, in its Rule 26 disclosures, Sherwood claimed lost profit damages from 2007 to 2010 of "at least $350,000" with lost profits for subsequent years of "at least $175,000", in addition to other categories of damage (*e.g.*, loss of reputation, "at least $500,000") – all without the benefit of providing, or more accurately, ***complying with Rule 26(a)(1)(C)***'s requirement of, damages computations and backup documentation.  *See* Ex. A to Turcotte Decl.  This unsubstantiated lost profits claim is roughly the equivalent of a lost profits representation that Sherwood made in response to BamBams' Request No. 37 for "any and all documents substantiating or relied upon in Sherwood making the claims of lost sales, lost future sales, lost profits and incurred legal fees in its Initial Disclosures."   *See* true and accurate copies of BamBams' First Request for Production of Documents and Sherwoods' Responses to same, annexed to Turcotte Decl. as Ex. B and C, respectively, and documents produced by Sherwood in response to Request No. 37 annexed to Turcotte Decl. at Ex. C.  Sherwood produced three, half-page charts, the first two of which were generated by Max Impact/BamBams (Bates number 148) and Sherwood (Bates number 149) in connection with a September 2011 settlement conference, and the third chart (Bates number 158) evidently generated by Sherwood for the sole purpose of responding to the document request; although the latter document is titled "Computation of  Sherwood Damages", it hardly constitutes a "computation" and, regardless, did not comply with the request, which prompted subsequent correspondence between counsel, a Rule 37 conference on July 19, 2013, and the Court's order entered July 25, 2013.

16

On November 12, 2013, three weeks after the close of fact discovery, in its pending motion for damages with respect to the default of plaintiffs Max Impact and Chanelia Ltd., Sherwood alleges lost profits for its "Expand-A-Banner" product of "at least **$741,227**" (*see* Declaration of Howard Schwartz dated November 12, 2013 annexed to Turcotte Decl. as Ex. I, at ¶¶8, 37) – a nearly 50% increase over a lost profits claim that it made just a few months earlier!

As the foregoing legal authority makes clear, the very fact that Sherwood has never provided BamBams with a computation of its damages for lost profits (an amount which grows by leaps and bounds without explanation), loss of reputation (alleged in Rule 26 disclosures to be "at least $500,000", again without explanation and omitted from Sherwood's damages claim in its pending default judgment application against Max Impact), or "[p]rofits made by Max Impact and BamBams" (alleged in Rule 26 disclosures to be "at least $1.2 million" without elaboration and also omitted from Sherwood's damages claim in its pending default judgment application against Max Impact, but presumably derivative of Sherwood's lost profits claim at best), warrants this Court precluding Sherwood from pursuing these threadbare damages claims. *See Design Strategy, Inc.*, 469 F.3d at 295 (plaintiff's deduction of the cost of operations from the revenue identified in its financial statements to derive gross profits "is a misstatement both of the facts of this case and of Rule 26(a)'s requirements. . . [B]y its very terms Rule 26(a) requires more than providing – without any explanation – undifferentiated financial statements; it requires a 'computation,' supported by documents. . . .  Design's 'simple arithmetic' calculation is wholly inadequate as a measure of damages"); *Roberts v. Ground Handling, Inc.*, *supra*, at *4 (failure to disclose measure of damages in Rule 26 initial disclosures, standing alone, is sufficient ground to preclude such evidence at trial).

17

B.  Preclusion of Sherwood's QuickBooks Summaries and Reports Is Proper Given Their
Unreliability and Its Failure to Produce Documents Repeatedly Sought by BamBams

Based on the shown unreliability of Sherwood's QuickBooks-generated summaries and reports, and Sherwood's failure to produce repeatedly requested, basic, unambiguous business and banking records that underlie the QuickBooks records, Sherwood should be precluded from using its QuickBook summaries and reports as evidence of gross profits and the costs of goods sold, in support of its damages claim.

As noted above, beyond Sherwood's obligations under Rule 26(a)(1)(C) to produce business records that support its lost profits claims, BamBams has made specific discovery requests for  accounts receivable documentation that would substantiate its claims of gross profits as well as for accounts payable documentation that would corroborate its claims of the cost of goods sold (COGS), making repeated written request to Sherwood for compliance with these requests in May and June of this year, in advance of BamBams' June 26th letter to the Court seeking a Rule 37 conference.  Sherwood, while at no point objecting to any BamBams discovery request, does not dispute that it has failed to produce materials that BamBams sought in document requests – including but not limited to copies of the invoices that had been actually transmitted to banner sales customers, and banking records that evidenced Sherwood's accounts receivables for the banner sales as well as accounts payable for its manufacturing costs – but insists that disclosed Sherwood QuickBooks records are sufficient to establish its 2006 gross profits and costs, as those records, according to Mr. Schwartz, were provided to Sherwood's accountant to prepare its 2006 tax returns.

To the contrary, first, it must be recognized that the QuickBooks records only summarize the data entry of financial information purportedly contained on Sherwood's primary business

records and is no substitute for the primary business records.[7]  Second, as Mr. Schwartz admitted

to the Court, Sherwood's accountant was never provided the actual invoices and accounts

receivable records for Sherwood products or accounts payable banking records, nor did the

accountant's tax return, as this Court recognized, segregate the subject "Expand-A-Banner"

profits or cost of goods sold (COGS) from the company's total gross revenue and COGS; the

accountant simply used Sherwood-generated QuickBooks reports and summaries to prepare tax

returns.  Accordingly, Sherwood's suggestion that its accountant verified the financial records,

when in fact he only used QuickBooks data supplied by Sherwood, rings hollow.  And third,

notwithstanding this, the supposed accountant records that Sherwood belatedly produced in an

attempt to establish that its accountant reviewed Sherwood financials to prepare tax returns

indicate, at the top left corner of each Balance Sheet and Profit & Loss statement (*see* Ex. J to

Turcotte Decl.),[8] that the accounting is done on a "accrual basis" <u>not</u> a cash basis, thereby only

reflecting when an order is placed, not when – or if – funds are actually received, further

marginalizing the documents' relevance with respect to *actualized* profits.

 Beyond the lack of corroboration, the QuickBooks records have proven to be unreliable.

As noted, pursuant to this Court's July 25th Order, by way of performing an audit on Sherwood's

QuickBooks on-line program, Sherwood was tasked with producing all paper invoices for the

six-month period July-December 2006.  It produced just twelve (12) paper invoices from this

period, or *only twenty percent (20%) of the fifty-eight (58) orders* that Sherwood's QuickBooks

summaries identified for this period.  Equally troubling, even among this small sampling, *two of*

---

[7] Mr. Schwartz advised the Court during the court teleconference on October 28, 2013 that QuickBooks data entry was handled by Sherwood's bookkeeper, Anita Pastan, so he cannot personally attest to the database's accuracy.

[8] These Balance Sheet and P&L statements were produced to BamBams *for the first time* on October 18, 2013, one business day before the close of fact discovery, and should be precluded on that basis alone.

*the 12 invoices deviated in dollar amount from the QuickBooks orders that Sherwood produced*,[9] which makes the latter inherently unreliable.  *See Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc.*, 628 F.Supp.2d 312, 317 (E.D.N.Y. 2009)(in view of discrepancies in defendants' inventory and its QuickBooks income statements, court concluded that records "are not completely accurate and reliable"); *Plato General Construction Corp. v. Dormitory Authority*, 2010 WL 2035273, at *14-16 (N.Y.Sup. May 20, 2010)(where party lost or destroyed original invoices and accounts receivable were unclear, in light of "unreliability" of QuickBooks entries, evidence was insufficient to establish damages claim). Indeed, Sherwood's counsel recently conceded to the Court that "**it is difficult to obtain accurate paper invoices as far back as 2006**."  *See* 10-24-13 Letter to Court annexed to Turcotte Decl. as Ex. G, at 2 (emphasis added).

        Further, the QuickBooks summaries do not shed any true light on Expand-A-Banner receivables.  The 2006 invoices, only confirm, at best, what was billed to Sherwood customers, not actual sales proceeds; in fact, the largest invoices (*see* Ex. K to Turcotte Decl.) indicate a "balance due" with no documentation produced to establish that such balances were ever paid.[10] Moreover, the total amount of "balances due" ($136,505.29) is approximately 30% of the

___

[9]        In one case, the paper Invoice (Invoice No. 10017) reveals that Sherwood billed *$600.00 less* to the customer than the QuickBooks-generated "invoice" states.  In the second case, the paper Invoice (Invoice No. 10125) reveals that Sherwood billed *$354.87 more* to the customer than the QuickBooks-generated "invoice" states.  These conspicuous discrepancies exist, as the Court recognized, in just a subset of  "a relatively modest [six month] sample", representing 8 percent of the period for which Sherwood seeks damages (7-19-13 Tr. annexed to Turcotte Decl. as Ex. D, at 47:13-15); extrapolating and applying this nearly 17% error rate over the full six-year period demonstrates the QuickBooks summaries' unreliability.

[10]        As discussed *infra*, in contravention of this Court's July 25th Order, on November 13, 2012, or more than three weeks after the close of fact discovery, Sherwood produced copies of cancelled checks and bank deposit slips from November and December 2006 for its Bank of America account.  Although the recently produced Sherwood *bank statements* disclose bank deposits/credits in excess of $360,000 for the November-December 2006 time period, and Mr. Schwartz represented that most banner orders are paid by check (*see* 7-19-13 Tr., at 29:18-21), only seven checks from this November 13th production, comprising less than 15% of its total deposits/credits total for this period, corresponded to Expand-A-Banner sales based on Sherwood's QuickBooks-generated invoices.

alleged, total Expand-A-Banner gross profits for 2006, the "baseline" for its damages claim.  At the July 19th conference, the Court recognized this "problem" and "understand[s] [BamBams'] concern" over this point.  *See* 7-19-13 Tr. annexed to Turcotte Decl. as Ex. D, at 22:6-26:7, 29:10-13.

For these reasons, the QuickBooks summaries and reports, as well as the records of Sherwood's accountant, which were produced only one day before the close of fact discovery, should be precluded.

C.  Preclusion Is Proper Given Sherwood Failed to Comply with the Court's Order to
    Search for and Produce Copies of Its Bank Deposit Slips and Wire Transfer Confirms

Sherwood's disclosure of Bank of America cancelled checks and bank deposit slips should be precluded due to their production after the fact discovery deadline in contravention of this Court's Order entered July 25, 2013.  Further, because Sherwood failed to take any measures to preserve, procure or produce any court-ordered wire transfer confirmations for the years 2005-2007 (or any other banking records) to substantiate any of its manufacturing costs, it should be precluded from relying upon a QuickBooks financial statement that has a mere single line item that purports to capture all of its costs-of-goods-sold for the Expand-A-Banner product.

At the Rule 37 conference held on July 19, 2013 and attended by Sherwood president Howard Schwartz, Sherwood was directed, *inter alia*, to produce "to the extent still available, deposit slips for the year 2006" and "the wire transfer confirmations reflecting the number of units and the corresponding cost of defendant's manufacture of the Expand-A-Banner product for the years 2005 through 2007", as memorialized in the July 25th Order.  In response, Sherwood's counsel represented via email dated August 8, 2013 that "Sherwood has conducted an extension search and Sherwood has not retained the deposit slips from 2006.  However, the

21

bank statements clearly show each and every deposit to the extent you need to see them."[11]  The August 8th email also represented that "Sherwood has conducted an extensive search and Sherwood has not retained the wire transfers for the years 2005, 2006, and 2007."[12]

At the subsequent Rule 37 teleconference held on October 28, 2013, when it became apparent that Sherwood had still failed to produce accounts receivable documentation in support of its damages claim, Mr. Schwartz proposed that Sherwood would contact its bank to determine if it maintained copies of its deposit slips for 2006, to which BamBams expressed surprise that this measure had not already been taken in view of the Court's July 25th Order, Sherwood's Rule 26 obligations and BamBams' April 2013 document requests.  On November 12, 2013, Sherwood produced to BamBams a letter from Bank of America dated October 30, 2013, in which Bank of America advised Sherwood:

> Your request for photocopies of deposits for the above referenced account was received.  The requested items are beyond the record retention period and we're unable to produce copies. . . .  Financial institutions are required by law to retain account records for five years, including those documents pertaining to predecessor banks.   In some instances, we retain records for an additional two years.

*See* true and accurate copy of Bank of America Letter annexed to Turcotte Decl. as Ex. L.

Notwithstanding this correspondence, on November 13, 2013, Sherwood, via email advising that

---

[11]     In truth, there *is not a single deposit entry* on the 2006 bank statements that matches either a QuickBooks-generated or a hard copy invoice amount for the same time period; to be fair, Mr. Schwartz did forewarn the Court and counsel at the July 19th conference that the statement's deposit entries would not match invoice amounts because Sherwood typically deposits multiple checks at one time.  7-19-13 Tr. annexed to Turcotte Decl. as Ex. D at 34:18-35:1.

[12]     The majority of the wire transfer entries on Sherwood's 2006 banking statements are non-descript as to the subject Sherwood product or transaction.  The total dollar amount of wire transfers identified on the 2006 bank statements does not come close to matching the QuickBooks-generated P&L Statement's line item for the Expand-A-Banner product's COGS, which makes the Sherwood's COGS amount also unreliable.  Also, during the October 28th court teleconference, Mr. Schwartz indicated for the first time that Sherwood also paid manufacturing costs by check in 2006, but Sherwood has made no effort to identify such check payments to BamBams.

"Bank of America did some more searching, and they found that they had some of the records from the end of 2006", produced 105 pages of copies of deposit slips for November and December 2006, with corresponding cancelled checks.  In view of this production, Sherwood urged BamBams in its cover email to forego its motion for preclusion "[s]ince the bank has produced all of the documents that they have."[13]

These circumstances convince BamBams of the opposite conclusion.  First, it is clear from Bank of America's original correspondence that had Sherwood endeavored to secure banking records at the time it originally filed its counterclaims in February 2009, or when it filed its amended counterclaims in September 2010, or when it filed its Rule 26 disclosures in February 2013, or even at the point *this Court explicitly ordered Sherwood to produce deposit slips* in July 2013, it could have preserved – and timely produced well in advance of the fact discovery deadline – most if not all of the 2006 banking records relating to its alleged accounts receivable and accounts payable to its Expand-A-Banner manufacturer.  Second, the fact that Bank of America "produced all of the documents that they have" in relation to *a very belated* document request by Sherwood does not equate to *Sherwood* having complied with its Rule 26 obligations.[14]  *See Richmond v. General Nutrition Centers Inc.*, 2012 WL 762307, at *4-8 (S.D.N.Y. March 9, 2012)(rejecting plaintiffs' argument that their "sparse" document production as to damages was sufficient because "the few documents they produced . . . were all they possessed").  Sherwood cannot seriously contend that it is acceptable to allow months to pass in

---

[13]   It is not clear what measures that Sherwood took to obtain copies of the alleged wire transfers to its banner manufacturer, but it is undisputed that Sherwood has failed to produce any records beyond its QuickBooks summaries, which set forth a single line item total of cost-of-goods-sold for the Expand-A-Banner, to substantiate 2005-2007 costs relative to its manufacture of the banner, including for its all-important, 2006 "baseline" year.

[14]   It further begs the question if Sherwood would still take the position that it had complied with its discovery obligations under Rules 26 and 34 if Bank of America, following its October 30th letter, had not undertaken additional searching measures that yielded the deposit slips and cancelled checks.

the wake of receiving discovery requests for banking and financial records (for which it never interposed any objection) without seeking the records from the bank directly or identifying the bank and providing BamBams with an authorization to obtain banking records, or even taking these measures immediately after this Court ordered the production of such banking records, and not bear any consequences when its dilatory action results in the bank purging or destroying responsive documents.  Nor should it be permitted to rely upon QuickBooks summaries when the actual banking records were available but for the asking.

Based on the foregoing, pursuant to Rule 37, Sherwood should be precluded using the belatedly produced Bank of America deposit slips and cancelled checks, as well as any QuickBooks summaries or reports, as evidence of gross profits and the costs of goods sold, given Sherwood has failed to produce court-ordered paper invoices and wire transfer confirmation, or any corresponding, unambiguous banking records, that substantiate these amounts.

POINT II

SHERWOOD SHOULD BE PRECLUDED FROM CALLING ITS ACCOUNTANT
OR BOOKKEEPER AS A WITNESS SINCE THESE INDIVIDUALS WERE NOT
IDENTIFIED ON ITS RULE 26 DISCLOSURES AND ONLY IDENTIFIED
AFTER THE FACT DISCOVERY DEADLINE

Following the fact discovery deadline of October 21, 2013, in a letter to the Court dated October 24, 2013, Sherwood's counsel stated that "since it is difficult to obtain accurate paper invoices as far back as 2006, **it is submitted that Sherwood should be allowed to rely on the testimony of its C.P.A.**" identified in the letter as David Payne.  *See* 10-24-13 Letter to Court annexed to Turcotte Decl. as Ex. G (emphasis in original).

Additionally, during the Rule 37 court teleconference held on October 28, 2013, Sherwood principal Howard Schwartz indicated for the first time that Sherwood's bookkeeper,

24

Anita Pastan, was responsible for the data entry of financial information to the company's QuickBooks on-line database.

Despite Sherwood's apparent need or desire to call Mr. Payne and/or Ms. Pastan as witnesses to admit financial records bearing on Sherwood's damages claim, neither Payne nor Pastan was identified on Sherwood's initial disclosures pursuant to Rule 26(a)(1)(A) or at any time before the fact discovery deadline.   Based on the foregoing legal authority and the extreme prejudice that would befall BamBams at this stage of the litigation, BamBams seeks these individuals' preclusion as witnesses pursuant to Rule 37.

<u>CONCLUSION</u>

For the foregoing reasons, BamBams request that this Court preclude Sherwood from (i) using the belatedly produced (a) Bank of America deposit slips and cancelled checks from 2006, and (b) Balance Sheet and P&L statements of Sherwood's accountant, (ii) using any QuickBooks summaries or reports as evidence of Expand-A-Banner gross profits and/or the costs of Expand-A-Banners sold, and (iii) utilizing Sherwood accountant David Payne and Sherwood bookkeeper Anita Pastan as witnesses; and (iv) for any further relief as this Court deemed just and proper.

Dated:   New York, New York
             November 18, 2013

                                        THE LAW OFFICE OF
                                        CHRISTOPHER B. TURCOTTE, P.C.

                                        By:   /s/ Christopher B. Turcotte
                                                   Christopher B. Turcotte (CT-0867)
                                        575 Madison Avenue
                                        New York, New York 10022
                                        (212) 937-8499
                                        *Attorneys for Third-Party Defendants BamBams, LLC*