```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

MAX IMPACT, LLC, et al.,              :

            Plaintiffs,               :

    -against-                         :    09 Civ. 902 (JGK)(HBP)

SHERWOOD GROUP, INC.,                 :
                                           OPINION
            Defendant,                :    AND ORDER

    -against-                         :

MAX IMPACT, LLC and BAMBAMS, LLC,     :

            Third-Party               :
            Defendants.
                                      :
----------------------------------X
```

       PITMAN, United States Magistrate Judge:


I.  Introduction

       By notice of motion dated November 18, 2013 (Docket Item 158), third-party defendant BamBams, LLC ("BamBams") moves for an Order pursuant to Fed.R.Civ.P. 37 precluding defendant Sherwood Group, Inc. ("Sherwood") from offering certain documents and witnesses.

       For the reasons set forth below, BamBams' motion is denied in part and granted in part.

II.   Facts

    A.   Procedural
        Background

    Max Impact, LLC ("Max Impact") commenced this lawsuit on February 2, 2009 against Sherwood asserting, among other things, patent and copyright infringement claims in connection with Sherwood's sale of a banner product called "Expand-A-Banner" (Docket Item 1).  Subsequently, Max Impact filed an amended complaint adding two new plaintiffs -- Chanelia Ltd. and Argo Development & Production Ltd. (Docket Item 77).  Sherwood filed its amended answer on September 30, 2010, and asserted counter-claims against BamBams -- the licensee of the patents-in-suit -- as a third-party defendant (Docket Item 81).  Among other things, Sherwood alleges that the counterclaim-defendants, including BamBams, made false statements in advertisements regarding Expand-A-Banner and have tortiously interfered with Sherwood's business relationships (Docket Item 81 at 9-29).[1]

---

    [1]Plaintiff Argo Development & Production Ltd. voluntarily withdrew from the action on November 2, 2011 (Voluntary Notice and Order of Withdrawal of Plaintiff Argo Development (Docket Item 122)).  Max Impact, LLC and Chanelia Ltd. were dismissed without prejudice for failure to prosecute on August 19, 2013 (Order, adopting Report and Recommendation (Docket Item 150)).  As a result, Sherwood and BamBams are the only remaining parties in this lawsuit.

Pursuant to a Scheduling Order, dated January 18, 2013 (Docket Item 141 at 1), Sherwood served its initial disclosures on BamBams on February 19, 2013 (Defendant's Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(A)(1), annexed as Exhibit A to the Declaration of Christopher B. Turcotte, dated November 18, 2013 ("Nov. 2013 Turcotte Decl.") (Docket Item 163)).  In its initial disclosures, Sherwood identified nine potential witnesses and listed the following categories of damages:

    1)    Defendant's lost sales from 2007 - 2010 are at least $1 million, resulting in lost profits of at least $350,000.

    2)    Defendant's lost future sales are at least $500,000, resulting in lost profits of at least $175,000.

    3)    Damage to Defendant's reputation is at least $500,000.

    4)    Profits made by Max Impact and BamBams are at least $1.2 million.

    5)    Defendant incurred legal fees in excess of $100,000.

(Nov. 2013 Turcotte Decl., Ex. A at 4).  No other information pertaining to damages was provided.

On April 5, 2013, BamBams requested that Sherwood produce documentation in support of Sherwood's damages claims (Third-Party Defendant BamBams, LLC's First Set of Requests for

Documents, dated April 5, 2013, at 9-11, annexed as Exhibit B to
Nov. 2013 Turcotte Decl.).  Sherwood responded to the requests in
part with document no. 158, which is a half-page chart entitled
"Computation of Sherwood Damages" (Sherwood's Responses to
Document Request by BamBams Nos. 1 to 39, Including Production of
Document Nos. 100 to 158, dated May 8, 2013, annexed as Exhibit C
to Nov. 2013 Turcotte Decl.).  The chart displays figures repre-
senting Sherwood's total banner sales by year for 2006 to 2012.
It also calculates Sherwood's decrease in banner sales since
2006, using the 2006 figure as a baseline.  The final column of
the chart is titled "Lost Profits (35% Profit Margin)" and pur-
ports to set forth Sherwood's lost profits for each year from
2006 to 2012.

        By letter, dated May 10, 2013, BamBams' counsel com-
plained of several deficiencies in Sherwood's production, includ-
ing Sherwood's failure to provide documentary support for its
damages claims (Nov. 2013 Turcotte Decl. ¶ 6).  Sherwood subse-
quently supplemented its production on May 30, 2013 and provided
BamBams with invoices generated from Sherwood's QuickBooks data-
base for 2006 and 2007, as well as wire transfer confirmations
for payments Sherwood made to the bank account of a Chinese
manufacturer from 2008 to 2013 (Nov. 2013 Turcotte Decl. ¶ 7).
BamBams continued to challenge the adequacy of Sherwood's

4

responses to BamBams' request for documents in connection with Sherwood's damages claims (Nov. 2013 Turcotte Decl. ¶ 8).

I held a discovery conference on July 19, 2013. BamBams argued that the QuickBooks invoices Sherwood had produced were inherently unreliable as evidence of accounts receivable and that the invoices could only be relied upon to demonstrate the amounts Sherwood had billed its customers and not actual proceeds from sales. BamBams also expressed concern that the QuickBooks invoices might contain "phantom sales" (Tr. of Discovery Conference, dated July 19, 2013, at 17 (Docket Item 156)). In order to test the accuracy of the QuickBooks invoices, BamBams requested copies of the paper invoices that had been contemporaneously transmitted to Sherwood's customers (Tr. at 17, 21). In response, Sherwood argued that it conducted its business by inputting all sales information into the QuickBooks database and noted that even Sherwood's accountant relied on the information generated by QuickBooks to file Sherwood's tax returns every year (Tr. at 28, 35). Moreover, Sherwood indicated that while "[e]verything [wa]s on QuickBooks," the paper copies of the invoices were all archived in a warehouse (Tr. at 40).

Following the conference, I issued an Order scheduling the close of fact discovery for October 21, 2013 and directing Sherwood to produce the following items to BamBams by August 8,

2013:  (1) bank statements and deposit slips, if they existed, for 2006; (2) QuickBooks summaries of Sherwood's accounts receivable for Expand-A-Banner for 2011 to the present; (3) paper invoices for Expand-A-Banner for a six month period, to be identified by BamBams, in order to verify the accuracy of the invoices generated from QuickBooks and (4) wire transfer confirmations from 2005 to 2007 (Order, dated July 25, 2013 (Docket Item 149)).

Pursuant to my Order, on August 8, 2013, Sherwood (1) produced bank statements for 2006 and informed BamBams that it was not able to locate deposit slips, despite an "extensive" search; (2) produced QuickBooks summaries for 2011 to the present; (3) produced 12 paper invoices for the six-month period from July 1 to December 31, 2006 and (4) informed BamBams that Sherwood had not retained wire transfer confirmations for 2005 through 2007 (E-mail from Ezra Sutton, counsel for Sherwood, to Christopher Turcotte, counsel for BamBams, dated August 8, 2013, annexed as Exhibit F to Nov. 2013 Turcotte Decl.).  By letter, dated October 16, 2013, BamBams again challenged Sherwood's production, noting that the 12 paper invoices accounted for only twenty percent of the orders that had taken place between July 1 and December 31, 2006 (Nov. 2013 Turcotte Decl. ¶ 15).  BamBams also noted that two of the paper invoices reflected amounts that

deviated from the QuickBooks invoices by several hundred dollars (Nov. 2013 Turcotte Decl. ¶ 15).  Sherwood repeated that it could not locate additional paper invoices for that particular time period (Nov. 2013 Turcotte Decl. ¶ 16).  On October 18, 2013, Sherwood produced the first page of its 2006 tax return and documents from its accountant, including a 2006 balance sheet and profit and loss ("P&L") statement (Nov. 2013 Turcotte Decl. ¶ 16; Letter from Ezra Sutton, counsel for Sherwood, to the under-signed, dated October 24, 2013, at 1, annexed as Exhibit G to Nov. 2013 Turcotte Decl.; Docket Item 170 at 4).

I held a telephone conference on October 28, 2013 (Tr. of Conference (Docket Item 168)).  It became apparent during the conference that Sherwood had not contacted its bank, Bank of America, to request copies of the deposit slips I had directed Sherwood to produce in my July 25, 2013 Order.  At the conclusion of the telephone conference, I granted BamBams permission to file the present motion.  Subsequently, on November 13, 2013, Sherwood supplemented its production yet again and provided BamBams with some deposit slips and checks for 2006 that Sherwood was able to obtain from Bank of America (Nov. 2013 Turcotte Decl. ¶ 18).

While this motion was pending, Sherwood produced still more documents.  On November 27, 2013, Sherwood produced QuickBooks-generated transaction reports, setting forth

Sherwood's cost of goods for Expand-A-Banner in 2006 (Docket Item 170 at 4-6). Sherwood also produced files from its tax accountant on December 3, 2013 (Docket Item 170 at 7-8). On December 9, 2013, Sherwood produced eight declarations from its customers and one declaration from its manufacturer, all of whom purported to authenticate documents that Sherwood previously produced (Declaration of Howard Schwartz in Opposition to BamBam's Motion to Preclude Certain Documents and Witnesses of Sherwood Group Pur-suant to Fed.R.Civ.P. 37 (Attaching 9 Declarations of Witnesses), dated December 9, 2013 ("Schwartz Decl.") (Docket Item 167)).

On December 6, 2013, BamBams deposed Howard Schwartz, President of Sherwood. At the deposition, BamBams reviewed document no. 158 and its supplement, document no. 560, with Schwartz (Tr. of Deposition of Howard Schwartz, dated December 6, 2013, portions of which are annexed as Exhibit O to Declaration of Christopher B. Turcotte, dated December 18, 2013 ("Dec. 2013 Turcotte Decl."), at 73, 87, 94 (Docket Item 174)). Document no. 560 consists of a table entitled "Sherwood Group, Inc. Expand-A-Banner ('EB') Sales Information." The table provides the following information for the years 2006 to 2012: gross receipts of all products; gross receipts of Expand-A-Banner; cost of goods of all products; cost of goods of Expand-A-Banner; gross profits for

8

Expand-A-Banner; profit margins for Expand-A-Banner; lost sales
for Expand-A-Banner and lost gross profits of Expand-A-Banner.
The table further indicates that Sherwood derived its lost-sales
figures using the sales of Expand-A-Banner for 2006 as a baseline
figure.

     B.  The Present
        <u>Motion</u>

     BamBams moves to preclude Sherwood from offering:
(1) the Bank of America deposit slips and cancelled checks for
2006; (2) the balance sheet and P&L statements Sherwood obtained
from its accountant (document nos. 664 to 675); (3) the
QuickBooks summaries and reports as evidence of gross profits
and/or costs of banners sold and (4) testimony from either
Sherwood's accountant or bookkeeper.  BamBams seeks this relief
pursuant to Fed.R.Civ.P. 37(c) and argues that it is appropriate
because Sherwood has (1) failed to provide adequate damages
computations and documentary support for its damages claims as
required by Fed.R.Civ.P. 26(a)(1)(A)(iii), (2) failed to comply
with the fact discovery deadline set forth in my Order, dated
July 25, 2013 (Docket Item 149) and (3) failed to disclose its
accountant and bookkeeper as potential witnesses in its initial
disclosures.

Sherwood argues in opposition that preclusion is not appropriate because it has provided adequate responses to BamBams' discovery requests (Opposition, dated December 9, 2013 (Docket Item 165)).

In its reply, BamBams challenges the productions Sherwood made after BamBams filed the instant motion (Reply Memorandum of Law, dated December 18, 2013 (Docket Item 170)). BamBams has also submitted an expert report in which BamBams' expert argues that Sherwood's lost-profits calculations are inaccurate (Rebuttal Expert Report and Disclosure of Dawn Hall, dated December 18, 2013, annexed as Exhibit N to Dec. 2013 Turcotte Decl.).

During oral argument, held on January 6, 2014, Sherwood's counsel informed the court and BamBams for the first time that it no longer intended to pursue damages on the basis of lost future sales and damage to reputation.[2]  Sherwood also informed the court and BamBams that it no longer intended to call either its bookkeeper or accountant as witnesses.

_____

[2]Specifically, counsel for Sherwood stated "with respect to reputation and a couple of the items we had initially put in there [i.e., Sherwood's initial disclosures], we have dropped those" (Oral Argument at 26:12 to 26:18; see also Oral Argument at 26:52-26:54 ("that one has been dropped" in reference to lost future sales claim)).  Counsel went on to clarify, "what we do maintain is that there were lost sales and lost profits as a result of those lost sales" (Oral Argument at 27:29 to 27:37).

III.  Analysis

   A.  Legal Standards

         Federal Rule of Civil Procedure ("Rule") 26 requires the exchange of initial disclosures.  Rule 26(a)(1)(A)(iii) provides, in relevant part, that:

> a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party -- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

"A party must make its initial disclosures based on the information then reasonably available to it [and] is not excused from making its disclosures because it has not fully investigated the case."  Fed.R.Civ.P. 26(a)(1)(E).  A party must also identify to the other parties any witnesses a party intends to present at trial.  Fed.R.Civ.P. 26(a)(3)(A).  Further, the disclosing party must timely supplement or correct its initial disclosures if it subsequently learns that the information provided was either "incomplete or incorrect."  Fed.R.Civ.P. 26(e)(1)(A).  "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence."  Ebewo v. Martinez, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (Koeltl, D.J.) (citations

11

omitted); accord Agence France Presse v. Morel, 293 F.R.D. 682, 683 (S.D.N.Y. 2013) (Nathan, D.J.).

A party that fails either to obey a court order concerning discovery or to comply with its disclosure obligations may be sanctioned under Rule 37.  "A district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37." Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2d Cir. 2006).  Pursuant to Rule 37(b)(2)(A), a court may sanction a party for failing to comply with a court order by, inter alia, precluding certain evidence or dismissing claims.  A court may also sanction a party for failing to provide or supplement information or to identify a witness as Rule 26(a) and 26(e) requires by prohibiting the offending party from "us[ing] that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). The party against whom sanctions are sought bears the burden of establishing that its noncompliance was either substantially justified or harmless.  Williams v. Boulevard Lines, Inc., 10 Civ. 2924 (DF), 2013 WL 5652589 at *3 (S.D.N.Y. Sept. 30, 2013) (Freeman, M.J.); Design Strategies, Inc. v. Davis, 367 F. Supp. 2d 630, 635 (S.D.N.Y. 2005) (Marrero, D.J.), aff'd, 469 F.3d 284 (2d Cir. 2006).

12

The Court of Appeals for the Second Circuit has identified four factors to be considered in determining whether preclusion is an appropriate sanction:

> (1) the party's explanation for the failure to comply with the [disclosure obligation]; (2) the importance of the testimony of the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006), citing Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997).  A showing of bad faith is not necessary to justify preclusion.  Design Strategy, Inc. v. Davis, supra, 469 F.3d at 296.

> B.  Application of the
>     Foregoing Principles[3]
>
>     1.  Computation
>         of Damages

BamBams argues that Sherwood has failed to provide damages calculations for the categories of damages Sherwood identified in its 26(a)(1) initial disclosures.[4]  Sherwood, in

---

[3]In light of Sherwood's concession during oral argument that it will not call its bookkeeper or accountant, BamBams' request to preclude these witnesses is now moot.  Thus, I do not address that argument here.

[4]As noted above, during oral argument, Sherwood withdrew "a
(continued...)

13

turn, argues that document nos. 158 and 560, as well as the numerous documents it has produced in support of these calculations satisfy its disclosure obligations.

Rule 26(a)(1)(A)(iii) requires a party to disclose "a computation of each category of damages claimed."  While the rule does not indicate the level of specificity that is required to disclose a "computation" properly, courts examining this issue have held that Rule 26(a)(1)(A)(iii) "requires more than merely setting forth the figure demanded." <u>First Nat. Bank of Chi. v. Ackerley Commc'ns, Inc.</u>, No. 94 Civ. 7539 (KTD), 2001 WL 15693 at *6 n.6 (S.D.N.Y. Jan. 8, 2001) (Duffy, D.J.); <u>accord</u> <u>In re Oakwood Homes Corp.</u>, 340 B.R. 510, 541 (D. Del. 2006) ("Simply reciting a dollar figure [] is not enough, under Rule 26(a)(1)(A)(iii)."); <u>City & Cnty. of S.F. v. Tutor-Saliba Corp.</u>, 218 F.R.D. 219, 221 (N.D. Cal. 2003); <u>see</u> <u>Stemrich v. Zabiyaka</u>, 12-CV-1409, 2013 WL 4080310 at *1 (M.D. Pa. Aug. 13, 2013). "Rule 26(a)(1) contemplates an estimate of damages and '<u>some</u>

---

[4](...continued)
couple of the items" previously listed as categories of damages in its initial disclosures, and has argued and briefed only its claim for past lost profits (Oral Argument at 26:12-26:18, 26:52-26:54, 27:29-27:37; Docket Item 165).  Accordingly, Sherwood's damages claims based on lost future sales, damage to reputation and BamBams' profits are no longer in issue.  Because BamBams has not moved to preclude Sherwood's remaining damages claim based on legal fees, I do not address that claim.

analysis.'"   US Bank Nat'l Ass'n v. PHL Variable Ins. Co., 12
Civ. 6811 (CM)(JCF), 12 Civ. 1580 (CM)(JCF), 2013 WL 5495542 at
*5 (S.D.N.Y. Oct. 3, 2013) (Francis, M.J.) (emphasis added;
citation omitted).  "In other words, the disclosures must be
sufficiently specific that the opposing party has some basis to
calculate the damages claimed against it." Stemrich v. Zabiyaka,
supra, 2013 WL 4080310 at *1, citing 6 James W. Moore, et al.,
Moore's Federal Practice § 15.02 (3d ed. 2010).  Further, as
discovery progresses, "much greater detail than previously pro-
vided [is] necessary to satisfy Rule 26(a)." Design Strategy,
Inc. v. Davis, supra, 469 F.3d at 295; see City & Cnty. of S.F.
v. Tutor-Saliba Corp., supra, 218 F.R.D. at 222 ("Once document
production has been substantially completed, however, Plaintiffs
will have to provide more detailed disclosure of their calcula-
tions either by way of Rule 26 disclosure or through interroga-
tory responses.").

        Sherwood has failed to provide BamBams with an adequate
computation of its damages.  Sherwood's 26(a)(1) initial disclo-
sures were wholly inadequate because they merely provided BamBams
with total dollar figures for each category of damages and were
unaccompanied by any analysis whatsoever[5] (Nov. 2013 Turcotte

_____

        [5]It appears that Sherwood also failed to comply with my
                                              (continued...)

Decl., Ex. A at 4).  See First Nat. Bank of Chi. v. Ackerley Commc'ns, Inc., supra, 2001 WL 15693 at *6 n.6 (Rule 26(a)(1)(A)(iii) "requires more than merely setting forth the figure demanded.").  Further, Sherwood's subsequent production of document no. 158, consisting of a half-page, four-column table, was also inadequate because it failed to disclose how Sherwood derived the profit margin it used to calculate lost profits, i.e., Sherwood failed to provide a calculation or formula through which the figures were derived.  See First Nat. Bank of Chi. v. Ackerley Commc'ns, Inc., supra, 2001 WL 15693 at *6 & *6 n.6 ("dates and amounts" on a table without more are insufficient under Rule 26(a)(1)(A)(iii) and plaintiff cannot expect the defendant to calculate the applicable rates by doing the research itself).

While document no. 560 provides BamBams with greater detail concerning Sherwood's Expand-A-Banner sales and profits, it still does not inform BamBams how the profit margins were calculated.  Sherwood belatedly provided BamBams with the calcu-

---

[5](...continued)
Scheduling Order, dated January 22, 2013 (Docket Item 141 at 1), in which I directed the parties to make all Fed.R.Civ.P. 26(a)(1) disclosures no later than February 18, 2013.  Sherwood's 26(a)(1) initial disclosures is dated February 19, 2013 (Exhibit A at 5). However, I do not base my decision herein on this trivial delinquency.

lation it used to determine the profit margins.[6]  Although the information in document no. 560 should have been reasonably available to Sherwood when it made its initial disclosures, Sherwood either had not fully investigated the case or chose not to disclose the information earlier.  Neither excuse is acceptable under Rule 26(a)(1).  Fed.R.Civ.P. 26(a)(1)(E).  Rather than comply with Rule 26(a)(1)'s requirement that a party provide the required disclosures of its own volition, Sherwood supplemented its initial disclosures only in response to BamBams' repeated requests and my Orders.  Such practice violates the "major purpose" of Rule 26(a)(1), which is to "<u>accelerate</u> the exchange of basic information about the case and to eliminate the paper work involved in requesting such information."  1993 Advisory Committee Notes to Rule 26(a) (emphasis added).

Finally, Sherwood's argument that it has "produce[d] hundreds of documents in support of [their damages] claims" falls short of meeting Rule 26(a)(1)'s computation requirement (Oral Argument at 21:32 to 21:50).  The Second Circuit has explicitly rejected this argument and held that "by its very terms Rule 26(a) requires more than providing -- without any explanation --

---

[6]Sherwood explained during oral argument that its profit margins were calculated by dividing its gross profits figures by its total sales figures for each relevant year (Oral Argument at 28:35-29:15).

17

undifferentiated financial statements; it requires a 'computation.'" Design Strategy, Inc. v. Davis, supra, 469 F.3d at 295. Hence, Sherwood's production of documents relating to its damages claims "cannot excuse [Sherwood] from its separate obligation to disclose a damages computation." Agence France Presse v. Morel, supra, 293 F.R.D. at 684, citing Design Strategy, Inc. v. Davis, supra, 469 F.3d at 295; see Gould Paper Corp. v. Madisen Corp., 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009) (Chin, then D.J., now Cir. J.) ("The documents produced by defendants, however, do not satisfy the Rule 26 requirement that defendants provide 'a computation of each category of damages claimed.'" (citing Fed.R.Civ.P. 26(a)(1))).  Accordingly, I conclude that Sherwood failed to comply with Rule 26(a)(1)(A)(iii)'s computation of damages requirement.

Notwithstanding Sherwood's noncompliance with Rule 26(a)(1), I find that precluding Sherwood from seeking its past lost profits is not appropriate.  In deciding whether to preclude Sherwood's claim, I consider Sherwood's explanation for its noncompliance, the importance of this claim to Sherwood, the prejudice suffered by BamBams, if any, and the possibility of a continuance.  See Patterson v. Balsamico, supra, 440 F.3d at 117.

18

Although Sherwood has not offered a compelling explanation[7] for its delay in providing BamBams with a damages computation, I find that the remaining factors weigh against preclusion and that Sherwood's noncompliance was harmless.

First, because Sherwood has withdrawn its other claims for damages, the claim for past lost profits is undoubtedly the most important component of Sherwood's lawsuit.  Second, BamBams' prejudice is minimal because BamBams has had the opportunity throughout these proceedings to review Sherwood's supporting documentation and even to depose the president of Sherwood about the calculations underlying the figures in document nos. 158 and 560 (Dec. 2013 Turcotte Decl., Ex. O at 73, 87, 94).  Third, although this case has been proceeding for several years, a trial date has not yet been scheduled.  In any event, there is no need for a continuance because, as mentioned above, BamBams has already deposed the president of Sherwood about the relevant damages charts, has reviewed the underlying supporting documentation and has had ample opportunity to review the foregoing materials with its expert.  See Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste, 08-CV-2540, 2011 WL 1239867 at *5 (E.D.N.Y. Mar.

_____

[7]Sherwood did not address this issue in its opposition brief.  During oral argument, Sherwood explained that it was under the belief that document nos. 158 and 560 satisfied its requirement to provide a computation of damages.

30, 2011) (plaintiff's failure to provide a computation of its damages was harmless where the damages claim was an important part of plaintiff's case and the plaintiff had previously provided defendant with all of the supporting documentation); Hewlett-Packard Co. v. Factory Mut. Ins. Co., 04 Civ. 2791, 2006 WL 1788946 at *18 (S.D.N.Y. June 28, 2006) (Freeman, M.J.) (plaintiff's failure to comply with Rule 26(a)(1) did not require preclusion where the inadequacies had been "cured").

Finally, the decisions BamBams cites that resulted in preclusion are factually distinguishable.  In the cases cited by BamBams, the plaintiffs either failed entirely to provide any meaningful disclosure of a computation of damages, see, e.g., Spotnana, Inc. v. Am. Talent Agency, Inc., 09 Civ. 3698 (LAP), 2010 WL 3341837 at *1-*2 (S.D.N.Y. Aug. 17, 2010) (Preska, D.J.) (precluding plaintiff's damages claim where discovery had been closed for four months, plaintiff had failed to provide damages figures in its initial disclosure and plaintiff failed to supplement its incomplete initial disclosure), or attempted to assert a new theory on damages at or after the end of fact discovery, see, e.g., Oceans Cuisine, Ltd. v. Fishery Prods. Intern., Inc., 05-CV-3613, 2006 WL 1071578 at *5-*6 (E.D.N.Y. Apr. 21, 2006) (sanctioning plaintiff for failing to provide a statement of damages in its initial disclosures and then attempting to assert a new

theory on damages after the discovery cut-off); <u>Austrian Airlines</u>
<u>Oesterreichische Lufverkehrs Ag v. UT Fin. Corp.</u>, 04 Civ. 3854
(RCC)(AJP), 2005 WL 977850 at *2 (S.D.N.Y. Apr. 28, 2005) (Peck,
M.J.) (precluding claim of damages where plaintiff asserted a new
theory not previously disclosed at the eleventh hour).  Neither
those facts nor similar facts are present here.

        Accordingly, because Sherwood's noncompliance was
harmless, BamBams' motion to preclude the past lost-profits claim
is denied.

             2.  Production of
                 Supporting
                 <u>Documentation</u>

        BamBams also moves to preclude Sherwood from offering
certain documents that it produced in support of its damages
claim.  Specifically, BamBams moves to preclude the use of
(1) the Bank of America deposit slips and cancelled checks from
2006 because they were not timely produced; (2) the balance sheet
and P&L statements of Sherwood's accountant because they were not
timely produced and are inadequate and (3) the QuickBooks reports
and summaries because they are unreliable evidence of profits and
costs for Expand-A-Banner (Docket Item 158).  BamBams also moves
to preclude Sherwood from using materials produced after the
filing of this motion (Docket Item 170).

                                21

a.  Deposit Slips and
    Cancelled Checks

BamBams' request to preclude Sherwood from using the

belatedly produced deposit slips and cancelled checks is granted.

Fed.R.Civ.P. 16(f)(1)(C) provides that, "[o]n motion or on its

own, the court may issue any just orders, including those autho-

rized by Rule 37(b)(2)(A)(ii)-(vii), if a party . . . fails to

obey a scheduling or other pretrial order."  Under Fed.R.Civ.P.

37(b)(2)(A), a court may sanction a party for failing to comply

with a court order by, inter alia, precluding certain evidence.

See Roadway Exp., Inc. v. Piper, 447 U.S. 752, 763 (1980) (Under

Fed.R.Civ.P. 37(b), a district court may bar a party from intro-

ducing certain evidence for failure to comply with discovery

orders.); Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 72

(2d Cir. 1988) (party's failure to comply with magistrate judge's

"reasonable orders compelling discovery" warranted preclusive

sanctions under Rule 37).

It is undisputed that Sherwood failed to comply with my

July 25, 2013 Order (Docket Item 149), which directed Sherwood to

produce deposit slips for 2006 "no later than August 8, 2013" and

set October 21, 2013 as the end of fact discovery.  Despite these

directives, Sherwood produced the 2006 deposit slips, along with

corresponding checks, by e-mail on November 13, 2013 (Third Party

22

Defendant BamBams' Memorandum of Law in Support of its Motion to Preclude, dated November 18, 2013 (Docket Item 159), at 22-23).

Sherwood has failed to demonstrate that its noncompliance was either substantially justified or harmless, or that preclusion is improper, pursuant to the factors outlined in Patterson. Sherwood first offered a justification for its delay during the oral argument held in January 2014. Schwartz explained that he had attempted to contact Sherwood's bank in July 2013 in order to obtain copies of deposit slips from 2006, pursuant to my July 25, 2013 Order. According to Schwartz, the bank informed him over the telephone that the deposit slips from 2006 were beyond the bank's retention period (Oral Argument at 42:00-42:55). I find Sherwood's explanation to be neither credible nor sufficient. When the issue of the deposit slips was raised during the October 28, 2013 telephone conference, Sherwood, who participated in the conference, did not inform the court or BamBams that it had previously attempted to contact the bank; instead, Sherwood's statements suggested that it had not done so but would do so following the conference:

> The Court:     With respect to the bank deposits, was your client -- Mr. Schwartz or did you Mr. Sutton check with the bank to see if they maintain copies of the deposit slips or wire transfer records from 2006?

23

*     *     *

Mr. Sutton:        I would assume Bank of America which is
                   the bank Mr. Schwartz and Sherwood used
                   at that time -- if it becomes necessary
                   I believe that we could have -- that we
                   could give the bank these bank state-
                   ments for the six month period of 2006
                   and ask the bank to give to us the de-
                   posits that were made for that six month
                   period.

(Tr. at 15-17).  Additionally, at various points, BamBams' coun-

sel noted that Sherwood should have taken the step of contacting

the bank "months ago," and I also expressed surprise that the

inquiry had not been earlier made (Tr. at 23, 26).  Then, too,

Sherwood did not indicate that it had previously contacted the

bank and requested the deposit slips.

The remaining <u>Patterson</u> factors also weigh in favor of

preclusion.  First, the documents do not appear to be of great

importance to Sherwood.  Sherwood noted during oral argument that

it did not retain the 2006 deposit slips when the counterclaim

was first asserted because it believed that the information on

the "original" QuickBooks invoices was sufficient to support its

damages claim (Oral Argument at 44:30-45:30).  Second, BamBams'

claim of prejudice is compelling because Sherwood led BamBams to

believe at various points throughout these proceedings that the

2006 deposit slips did not exist (<u>see</u> Nov. 2013 Turcotte Decl.,

Exs. F, L).  Sherwood's sudden production of 105 pages of deposit

24

slips and corresponding checks weeks after the conclusion of fact discovery is precisely the type of "sandbagging" that Rules 26 and 37 are intended to prevent.  <u>Agence France Presse v. Morel</u>, <u>supra</u>, 293 F.R.D. at 683; <u>Ebewo v. Martinez</u>, <u>supra</u>, 309 F. Supp. 2d at 607.  Finally, a continuance would not cure the burdens BamBams has had to endure as a result of Sherwood's untimely production.

Accordingly, because Sherwood has failed to demonstrate that its delayed production of the 2006 deposit slips and cancelled checks was either harmless or substantially justified, Sherwood is precluded from relying on these documents.  <u>See RLI Ins. Co. v. May Constr. Co., Inc.</u>, 09 Civ. 7415 (PKC), 2011 WL 1197937 at *2-*3 (S.D.N.Y. Mar. 22, 2011) (Castel, D.J.) (granting motion to strike for party's failure to obey a discovery order under both Rule 16(f) and Rule 37(b)(2)(A)).

          b.  Balance Sheet and
              <u>P&L Statements</u>

BamBams next seeks to preclude Sherwood from using its October 18, 2013 ten-page production of Sherwood's balance sheet

and P&L statements for 2006 on the ground that production was untimely (see Docket Item 158 at 19 n.8; Docket Item 170 at 4).[8]

Although Sherwood provided these materials at the tail-end of the fact discovery period, the production was not untimely because fact discovery had not concluded yet.  Moreover, the materials were neither of large volume nor did they purport to assert a new basis for damages.  See Safespan Platform Sys., Inc. v. EZ Access, Inc., 06CV726A, 2011 WL 7473467 at *4-*5 (W.D.N.Y. Dec. 30, 2011) (denying defendants' motion to preclude evidence of plaintiff's lost profits on the basis of an "eleventh-hour" production because "unlike the cases cited by defendants, [the] discovery issue did not arise at the eve of trial or present a novel theory late in the proceedings"), report and recommendation adopted, 2012 WL 777305 (W.D.N.Y. Mar. 8, 2012).

Accordingly, BamBams' motion to preclude the balance sheet and P&L statements as untimely is denied.

_____

[8]In addition to untimeliness, BamBams argues that the documents should be precluded because they are not reliable (Docket Item 170 at 3-4).  This argument relates to the weight of the evidence and is inappropriate on a Rule 37 motion to preclude. The issue of reliability is distinct from the issues relevant to Sherwood's discovery obligations.  See Conte v. Newsday, Inc., CV 06-4859 (JFB)(ETB), 2011 WL 2671216 at *4 (E.D.N.Y. July 7, 2011) (noting in the context of expert reports, that a violation of Fed.R.Civ.P. 26(a) is distinguished from the question of admissibility under the federal rules of evidence); accord Tokio Marine & Nichido Fire Ins. Co. v. Calabrese, CV 07-2514 (JS)(AKT), 2011 WL 5976076 at *11 (E.D.N.Y. Nov. 28, 2011).

c.  QuickBooks Reports
    and Summaries

BamBams also seeks to preclude Sherwood from using its QuickBooks reports and summaries on the grounds that (1) Sherwood has failed to comply with Fed.R.Civ.P. 26(a)(1)(A)(iii), (2) Sherwood's productions in response to BamBams' discovery requests have been inadequate and (3) the QuickBooks reports and summaries are inherently unreliable.

In addition to requiring a computation of damages, Rule 26(a)(1)(A)(iii) requires a party to disclose the evidentiary materials on which each computation is based.  This disclosure must also be made "without awaiting a discovery request" and must be timely supplemented.  Fed.R.Civ.P. 26(a)(1).  Here, Sherwood failed to provide any documentary support for the damages claims set forth in Sherwood's 26(a)(1) initial disclosures (Nov. 2013 Turcotte Decl. ¶ 6; Nov. 2013 Turcotte Decl., Ex. A).  Subsequently, BamBams requested the materials underlying Sherwood's damages claim as well as information pertaining to Sherwood's accounts receivable and payable for Expand-A-Banner (Nov. 2013 Turcotte Decl. ¶ 6; Nov. 2013 Turcotte Decl., Ex. B).  Significantly, Sherwood did not raise any objections in its responses to BamBams' request for documents (Exhibit C to Nov. 2013 Turcotte Decl.).  In total, Sherwood has produced the following materials

27

in response to these requests:  QuickBooks invoices for the years 2006 and 2007, in addition to several paper invoices for 2006; a portion of Sherwood's 2006 tax return; Sherwood's balance sheets and P&L statements for 2006; Quickbooks summaries and reports for the years 2006 to 2012; and bank statements for 2006.  Sherwood has been unable to locate the remaining paper invoices for July 1 to December 31, 2006; wire transfers for 2005 to 2007; and, as discussed above, belatedly produced the 2006 deposit slips, which are now precluded.

BamBams argues that the materials Sherwood has produced are not adequate responses because they consist mainly of inter-nal computer records and do not represent Sherwood's primary business records (Docket Item 159 at 7).  In other words, BamBams challenges the accuracy of the information contained in the computer records and, as a result, has repeatedly requested that Sherwood produce corroborating financial materials.  Sherwood has stated on multiple occasions that the QuickBooks database func-tions as its primary business tool for record keeping; according to Sherwood, it does not use QuickBooks to merely memorialize and record independently existing paper documents (see Docket Item 165 at 2).  However, the audit the parties conducted pursuant to my July 25, 2013 Order revealed several discrepancies between the

28

paper and QuickBooks-generated invoices.[9]  Nevertheless, Schwartz
reiterated during oral argument that the information on the
QuickBooks data-base represents the "most accurate" information.
Any discrepancies, he argued, resulted from the fact that
Sherwood did, on occasion, print out a paper invoice before all
of the information was finalized, which could result in an incom-
plete paper invoice (Oral Argument at 58:55-1:00:30).

In light of Sherwood's failure to provide documentary
support for its damages claims in its 26(a)(1) initial disclo-
sures, as well as its failure to provide a complete and timely
response to BamBams' discovery requests, I find that Sherwood has
failed to comply with its obligations under Rule 26(a)(1).
"[T]he federal discovery rules place a duty on a party to turn
over not only proper materials of which he is aware, but also
those of which he reasonably ought to have been aware." Arthur
v. Atkinson Freight Lines Corp., 164 F.R.D. 19, 20 (S.D.N.Y.
1995) (Owen, D.J.); accord Ritchie Risk-Linked Strategies Trading
(Ir.), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y.
2012) (Marrero, D.J.) (adopting Report and Recommendation).
Hence, Sherwood's contention that it did not foresee in 2010 the

---

[9]According to BamBams, on one paper invoice Sherwood billed
$600.00 less than the amount listed on the QuickBooks invoice,
while on another Sherwood billed $354.87 more than it did on the
correpording QuickBooks invoice (Docket Item 159 at 20 n.9).

need to retain certain materials does not absolve it of its obligations under Rule 26(a)(1), particularly in light of the fact that it failed to raise any objections in its responses to BamBams' request for documents.

However, because "preclusion of evidence is a 'harsh remedy'" and "should be imposed only in rare situations," Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC, supra, 280 F.R.D. at 156 (citations omitted), preclusion would not be appropriate here if Sherwood can provide a substantial justification for its conduct.  "Substantial justification may be demonstrated where there is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request, or if there exists a genuine dispute concerning compli-ance." Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC, supra, 280 F.R.D. at 159 (inner quotation marks and citations omitted).

Applying the factors in Patterson, I find that Sherwood's conduct does not warrant preclusion of the QuickBooks reports and summaries.  First, Sherwood's explanation for relying almost exclusively on QuickBooks materials is compelling. Sherwood has consistently maintained that the QuickBooks invoices are the "original invoices" because it uses the database as its

primary business tool and the company has shifted "away from
paper" (see Oral Argument at 44:30-45:30; Tr. of July 19, 2013
Conference at 40).  Moreover, Sherwood has represented that its
accountant also relies on QuickBooks to prepare Sherwood's tax
returns (Tr. at July 19, 2013 Conf. at 13).  While that fact does
not confirm the accuracy of the contents, it does lend credence
to Sherwood's contention that QuickBooks contains the company's
"actual, primary" business records (Docket Item 165 at 2 (empha-
sis in original)).

      Second, the QuickBooks reports and summaries are clear-
ly of great import to Sherwood, as they alone evidence Sherwood's
Expand-A-Banner sales and costs for the years following 2006.

      Third, while BamBams has been inconvenienced in various
respects, any prejudice is diminished by the fact that it has
timely received a significant amount of the information that it
requested.  For example, the P&L statements set forth the costs
and profits associated with Expand-A-Banner.  Notably, as dis-
cussed during the July 19, 2013 conference, the information on
the QuickBooks reports/summaries is identical to that on the
QuickBooks invoices (Tr. at 40-41); yet, BamBams seeks to pre-
clude only the QuickBooks reports/summaries as evidence of prof-
its and costs, and not the 2006 QuickBooks invoices.  Further,
BamBams' chief claim of prejudice -- that Sherwood's failure to

provide additional "backup" for its materials raises concerns
regarding reliability -- primarily concerns the weight of that
evidence.  In other words, though BamBams has not received all of
the "backup" it requested, BamBams may still dispute the reli-
ability of the materials in a motion in limine or before a fact-
finder.

Finally, these circumstances do not warrant a continu-
ance in this instance.

For the foregoing reasons, I conclude that Sherwood's
justification and the importance of the evidence outweigh the
prejudice to BamBams.  Accordingly, I deny BamBams' motion to
preclude the QuickBooks reports and summaries.

### d.  Remaining Documents

Sherwood is precluded from using the evidence it sub-
mitted during the pendency of this motion.  These materials
include:  (1) document nos. 905 to 914, produced on November 27,
2013 (see Docket Item 170 at 4-6); (2) Sherwood's tax accoun-
tant's 2006 invoices, produced on December 3, 2013 (see Docket
Item 170 at 7-8); and (3) the declarations produced on December
9, 2013 (Docket Item 167).  These productions clearly violated my
July 25, 2013 Order setting October 21, 2013 as the deadline for

fact discovery, and Sherwood has offered no justifications for these untimely submissions.  The prejudice to BamBams in admitting these documents would be significant, particularly with regard to the declarations because BamBams does not have the opportunity to depose the declarants and probe the measures each declarant took (if any) to substantiate the QuickBooks invoices.

Because Sherwood has not demonstrated that its failure to comply with my July 25, 2013 Order was either substantially justified or harmless, Sherwood may not rely on the foregoing materials.

IV.  <u>Conclusion</u>

Accordingly, for all the foregoing reasons, BamBams' motion to preclude Sherwood from using the Bank of America deposit slips and cancelled checks is granted.  Sherwood is also precluded from using (1) document nos. 905 to 914, produced on November 27, 2013; (2) Sherwood's tax accountant's files, pro-

duced on December 3, 2013 and (3) the declarations submitted on December 9, 2013 (Docket Item 167).

BamBams' motion is denied in all other respects.

Dated:  New York, New York
        March 7, 2014

Respectfully submitted,

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Christopher B. Turcotte, Esq.
The Law Office of Christopher
B. Turcotte, P.C.
Suite 1006
575 Madison Avenue
New York, New York  10022

Ezra Sutton, Esq.
Ezra Sutton & Associates
900 Route 9
Woodbridge, New Jersey  07095